UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles Thomas SIMPSON,
Defendant–Appellant.

No. 89–8000.

United States Court of Appeals,
Eleventh Circuit.

June 27, 1990.

Gregory Z. Schroeder, Atlanta, Ga., for defendant-appellant.

Robert L. Barr, Jr., U.S. Atty., N.D. Ga., William R. Toliver, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, TUTTLE and RONEY *, Senior Circuit Judges.

RONEY, Senior Circuit Judge:

Defendant Charles Thomas Simpson was convicted of causing to be shipped through interstate commerce, and of receiving, materials containing depictions of minors engaged in sexually explicit activity. 18 U.S.C.A. § 2252. On his appeal, we hold that:

(1) the search that revealed the pornographic materials was not unconstitutional;

(2) the evidence was sufficient to support the convictions;

(3) neither the district court nor the probation officer was required to inform defendant of the favorable sentencing guideline consequences of acceptance of responsibility; and

(4) Simpson waived his right to assert a Sixth Amendment claim that he was entitled to have an attorney present during his presentence interview with a probation officer.

We thus affirm Simpson's conviction and sentence.

## (1) The Search

Simpson moved to suppress the magazines and videotapes for which he was convicted on Fourth Amendment grounds. The boxed materials were first discovered by Federal Express employees, who turned them over to federal law enforcement agents. Recognizing that a search or seizure conducted by a private party does not violate the Fourth Amendment, Simpson argues that the Federal Express employees acted as instruments or agents of the Government in their searches of the box. *See Coolidge v. New Hampshire,* 403 U.S. 443, 487, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564 (1971). Simpson further argues that the scope of the subsequent governmental intrusions on his privacy interests in the box exceeded the scope of the earlier intrusion by Federal Express employees. A brief recital of the facts refutes these arguments.

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

A Federal Express office in Atlanta, Georgia received through its shipping system a cardboard box that was missing an airbill, or address label. Unable to deliver the box without the airbill, the Federal Express employees in Atlanta forwarded the box to the company's lost and found department in Memphis, Tennessee. There, following standard company policy, a Federal Express employee opened the box to look for information that might reveal a destination for the parcel. Seeing magazines and a loose-leaf folder that contained pictures of nude children, the employee then taped the box shut and turned it over to a Federal Express Security Officer.

The officer determined that the magazines contained depictions of minors that could constitute child pornography and that a number of videotapes were in the box. Federal Express Security Officer Raymond Priddy later viewed four of these tapes, using a company-owned videocassette recorder located in the security office. Priddy determined that the tapes contained sexually explicit material, and that some of the actors appeared to be minors. He then called the United States Attorney's office in Memphis to inform it of the suspected contraband.

An Assistant United States Attorney, using Federal Express's videocassette recorder, later viewed the same four tapes and called an F.B.I. Agent, who inventoried the materials and viewed these same tapes on the company's recorder.

In the meantime, Priddy determined from information in the company's computer system that the box should have been delivered to defendant Simpson at his workplace address in Atlanta. Earlier that day, a person identifying himself as Chuck Simpson had called both the Atlanta Federal Express office and the Memphis lost and found department to report that a package he was expecting in Atlanta had not arrived from Orlando, Florida. The caller left an Atlanta address where the box could be delivered if located. He also warned the company employees that the box contained sexually explicit materials

and should not be opened. This information was entered into the company's computer system. Priddy later determined that the box in his office matched the caller's description of his lost parcel, and informed the F.B.I.

The F.B.I. arranged for a controlled delivery of the box to Simpson, by requesting Priddy to reseal the box and send it through the Federal Express system back to the Atlanta Federal Express office. Federal Express lent company uniforms and a delivery truck to F.B.I. agents, who took possession of the box. The agents took the box to the address left by the caller, and asked for Charles Simpson. The defendant identified himself, acknowledged that the package was his, and signed a receipt for it. The agents asked Simpson to open the box and identify the contents, but Simpson declined, saying that he recognized the parcel. The agents then placed Simpson under arrest.

 Simpson focuses his first argument on the fact that prior to his employment by Federal Express, Priddy had served as an officer in the Memphis Police Department, and that Priddy was familiar with members of the United States Attorney's office in Memphis. We have previously held that such facts, without more, do not establish that the private party acted as an agent of the Government at the time of the search. *See United States v. Bomengo,* 580 F.2d 173, 175 (5th Cir.1978), *cert. denied,* 439 U.S. 1117, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *see also United States v. Bazan,* 807 F.2d 1200, 1203 (5th Cir.1986), *cert. denied,* 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987). Although Federal Express employees received training by Government law enforcement officers on when to contact Government agents after contraband had been discovered, there is nothing in the record to show that Government agents advised Federal Express employees when, or under what circumstances, to conduct searches. No Government agent instructed the Federal Express employees to open and inspect the box in this case, and no Government agent knew of its existence until after the

searches by various Federal Express employees had occurred. The searches were initiated by Federal Express in the normal course of business, with the sole purpose of determining where to deliver the parcel. *See United States v. Miller,* 688 F.2d 652, 657 (9th Cir.1982) (two critical factors of analysis are whether the Government knew of intrusive conduct, and whether private actor's purpose was to assist law enforcement or to further other ends). These initial searches did not violate the Fourth Amendment.

■■■ As to Simpson's second argument, the Government agents' conduct did not exceed the scope of the earlier private searches. *See United States v. Jacobsen,* 466 U.S. 109, 115, 104 S.Ct. 1652, 1657, 80 L.Ed.2d 85 (1984). The box's contents had already been examined, their illicit character had been determined, and they were open for viewing by the time the Assistant United States Attorney and the F.B.I. Agent arrived on the scene. Their search of the box and videotapes did not exceed the scope of the prior private searches for Fourth Amendment purposes simply because they took more time and were more thorough than the Federal Express agents. The seizure of the box without a warrant did not violate the Fourth Amendment. The defendant's privacy interest in the contents of the package had been largely compromised by the time the agent decided to arrange for the transfer to Atlanta and the controlled delivery. *Id.* at 121–22, 104 S.Ct. at 1660–61. The decision to permit Federal Express to retain control of the box, and the decision to make a controlled delivery to Simpson based on the information gained through Federal Express's computer system, were reasonable under the circumstances.

### (2) Sufficiency of the Evidence

■■■ Simpson argues first that the Government did not prove that Simpson sent the box from Orlando, and second, that although he signed for the box at his workplace in Atlanta, the Government never transferred the box to him, so he never "received" it under the statute. Viewed in the light most favorable to the Government and drawing all inferences in favor of the verdict, the evidence of his telephone calls to Federal Express reporting the lost box supports a finding that Simpson knowingly caused the materials to be transported in interstate commerce. The receipt of the materials is supported by the evidence that he acknowledged and signed for the box at his workplace prior to being arrested. The Government need not, as Simpson implies, step out of the room and wait a moment before making the arrest. The evidence is sufficient to support the conviction.

### (3) Acceptance of Responsibility

■■■ After announcing the verdict in open court, the district judge set the sentencing date and informed Simpson that the Sentencing Guidelines applied to his case, and that the United States Probation Department would conduct a presentence investigation.

In his first challenge to this procedure, Simpson argues that he was denied due process under the Fifth Amendment because neither the district court nor the probation officer informed him that his sentence might be favorably adjusted under the Guidelines for his acceptance of responsibility. The cases cited by Simpson for this proposition do not support it. They stand for the different proposition that a defendant's due process rights are violated when the sentencing judge relies on materially false information, including that set out in a presentence report, and gives the defendant no meaningful opportunity to rebut the falsehoods. *See Barton v. Lockhart,* 762 F.2d 712, 712–13 (8th Cir.1985); *United States v. Cusenza,* 749 F.2d 473, 478–80 (7th Cir.1984); *United States v. Stephens,* 699 F.2d 534, 537 (11th Cir.1983).

In her presentence report, the probation officer recommended a two-point reduction in the offense level under the Guidelines for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. The prosecutor objected to this adjustment, arguing that Simpson had never admitted that his conduct in shipping the materials in interstate commerce was improper or immoral.

The district court accorded Simpson ample opportunity at the sentencing hearing to show acceptance of responsibility within the meaning of the Guidelines, both personally and through his attorney. The finding by the district court that Simpson had not accepted the wrongfulness and illegality of his conduct is not clearly erroneous. There is no support for Simpson's broader argument that the Constitution requires the sentencing court or the probation department to inform him of the substantive aspects of the sentencing laws.

### (4) Counsel at Presentence Interview

■ On appeal, Simpson contends that he was denied his rights under the Sixth Amendment because he was not represented by counsel during his presentence interview with the probation officer. This issue was not raised in the district court. The record contains no evidence that Simpson's attorney attempted to attend the interview, or that either the court or the probation department acted to exclude him from it. We need not reach this issue, because Simpson has waived his right to argue this point on appeal by failing to raise it first in district court. *See e.g., United States v. Wilson*, 894 F.2d 1245, 1250 (11th Cir.1990).

We note that three circuits have rejected this argument on the ground that a presentence interview by a probation officer is not a critical stage of the criminal proceedings at which the Sixth Amendment ensures representation. *United States v. Jackson*, 886 F.2d 838, 843–44 (7th Cir.1989); *Brown v. Butler*, 811 F.2d 938, 940–41 (5th Cir. 1987); *Baumann v. United States*, 692 F.2d 565, 577–78 (9th Cir.1982).

AFFIRMED.