UNITED STATES of America,
Plaintiff–Appellee,

v.

Scott TISDALE (90–3302), Jerry L. Irby (90–3306), and James E. Fullilove (90–3335), Defendants–Appellants.

Nos. 90–3302, 90–3306 and 90–3335.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 5, 1991.

Decided Jan. 2, 1992.

James A. Wilson, Asst. U.S. Atty. (argued and briefed), Dayton, Ohio, for the U.S.

Lawrence J. Greger (argued and briefed), Dayton, Ohio, for Scott Tisdale.

Beth A. Kolotkin (briefed and argued), Dayton, Ohio, for Jerry L. Irby.

Thomas A. Schaffer (briefed and argued), Sutton, Overholser & Schaffer, Dayton, Ohio, for James E. Fullilove.

Before JONES and NELSON, Circuit Judges, and JOINER, Senior District

Judge.*

DAVID A. NELSON, Circuit Judge.

This is an appeal by three defendants from sentences imposed on pleas of guilty to various federal narcotics charges. Each of the defendants contends, among other things, that the district court erred in enhancing his base offense level pursuant to U.S.S.G. § 2D1.1 for the possession of a firearm during the commission of the offense. One defendant also maintains that he was deprived of a Sixth Amendment right to be represented by counsel during presentence interviews with a probation officer.

With respect to the firearm enhancement question, we find that possession of the weapon was properly attributed to two of the defendants but not to the third. With respect to the Sixth Amendment question, we conclude that the Amendment's guarantee of assistance does not extend to presentence interviews. Although we would be prepared, in the exercise of our supervisory powers, to require probation officers to honor requests for the presence of counsel during such interviews, the record in the case at bar does not indicate that any such request was ever made here.

I

In December of 1988 the assistant manager of an apartment building in Dayton, Ohio, told law enforcement officers about activities in one of the apartments that appeared to be drug-related. Members of a narcotics task force began watching the apartment and found that four individuals were entering and leaving it frequently and at odd hours. These people were later identified as the defendants—Scott Tisdale, Jerry Irby, and James Fullilove—and Clemoth Toombs, who is not a party to this appeal.

On January 8, 1989, the officers obtained search warrants for the apartment and an automobile parked outside. When they entered the apartment, the officers discover-

ed, among other things, a plastic baggie containing heroin; a loaded .25 caliber pistol in open luggage; triple beam scales; several boxes of plastic baggies; manitol, which is a cutting agent for heroin and cocaine; and over five thousand dollars in cash. The search of the car revealed a large quantity of a white powder that proved to be cocaine.

A six-count indictment was returned against the defendants. Pursuant to Rule 11, Fed.R.Crim.P., each defendant agreed to plead guilty to a single count; the Government agreed to drop the remaining charges. Messrs. Tisdale and Fullilove pleaded guilty to Count One, which charged them with conspiracy to possess with intent to distribute specified quantities of cocaine and heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. Mr. Irby pleaded guilty to Count Four, which charged him with aiding and abetting and with possession of more than 500 grams of cocaine with intent to distribute it in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).

Probation officers prepared presentence reports for the defendants. The reports concluded that each defendant had a base offense level of 26; that each should receive a two-level increase for possession of a firearm during the commission of the offense; and that none of the defendants was entitled to a downward adjustment for acceptance of responsibility or for his role in the offense. Based on a total offense level of 28 and a criminal history category of I, the indicated sentencing range was 78–97 months for each defendant.

After a series of hearings, the district court sentenced the defendants as follows.

*Tisdale:* The court accepted the probation officer's report and sentenced Mr. Tisdale to 78 months—the bottom of the range—with credit for time already served. At a subsequent hearing, however, the court vacated the sentence in order to give an additional one-point credit for time

---

* The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

served. This adjustment reduced Mr. Tisdale's offense level to 27 and his sentencing range to 70–87 months. The court sentenced him to 70 months, the bottom of the new range.

*Fullilove:* The court accepted most of the probation officer's recommendations, but agreed with Mr. Fullilove that he should receive a two-point reduction for being a "minor participant" as that term is used in U.S.S.G. § 3B1.2(b). The total offense level was therefore placed at 26, producing a guideline range of 63–78 months. The court imposed a sentence of 63 months, again the bottom of the range, with credit for time served. As with defendant Tisdale, Mr. Fullilove's sentence was vacated at a subsequent hearing to give him additional credit of one point for time served. This produced a guideline range of 57–71 months, and the court imposed a sentence at the bottom of the new range.

*Irby:* The court accepted the probation officer's recommendations in full. The defendant's adjusted offense level was set at 28, minus one point for time served,[1] for a total offense level of 27 and a guideline range of 70–87 months. The court imposed a sentence of 75 months, stating:

> "the Court has not sentenced at the low end of the guidelines because this Court concludes that, while there may not be evidence that Mr. Irby was either a major or minor participant in this offense, it is clear that his actions facilitated these acts."

This appeal followed.

## II

We turn first to the defendants' contention that the Government failed to make the required showing as far as the weapon was concerned, and the district court therefore erred in enhancing the base offense levels pursuant to U.S.S.G. § 2D1.1(b).

### A

Before it was amended on November 1, 1989, § 2D1.1(b) said, in pertinent part: "If a firearm or other dangerous weapon was possessed during the commission of the offense, increase by 2 levels."[2] The accompanying commentary explained that the enhancement should be applied "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 3 (January 15, 1988).

 Under the law in this circuit the burden rests upon the Government to prove "(1) that the defendant 'possessed' the weapon, and (2) that such possession was during the commission of the offense." *United States v. Sanchez,* 928 F.2d 1450, 1460 (6th Cir.1991). Possession may be actual or constructive. *Id.* Constructive possession means "the 'ownership, dominion, or control' over the item itself, 'or dominion over the premises' where the item is located." *United States v. Snyder,* 913 F.2d 300, 304 (6th Cir.1990) (citations omitted), *cert. denied,* — U.S. —, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991). Possession "during the commission of the offense" may be found if the firearm "could have facilitated [the] illegal [drug] transactions," *id.;* the guidelines do not require that the "firearms ... be readily accessible to be 'connected' with the drug offense." *United States v. McGhee,* 882 F.2d 1095, 1099 (6th Cir.1989).

 In the case at bar the prosecution satisfied both requirements with respect to Mr. Tisdale. He admitted to police investigators that he had dominion and control over the pistol found in the apartment that served as the headquarters of the defendants' drug operations. Mr. Tisdale therefore was in constructive possession of a firearm whose connection to the offense was not clearly improbable.

---

1. Mr. Irby was sentenced at the same hearing at which Messrs. Tisdale and Fullilove were resentenced. Accordingly, the district court incorporated the one-point credit into Mr. Irby's sentence from the beginning, obviating any need to vacate the sentence later.

2. On November 1, 1989, a clarifying amendment to this section became effective. It replaced "a firearm or other dangerous weapon" with "a dangerous weapon (including a firearm)." See U.S.S.G. Appendix C, Amendment 124.

■ The Government also satisfied both requirements with respect to Mr. Fullilove. Under the theory of liability established in *Pinkerton v. United States*, 328 U.S. 640, 648, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946), co-conspirators are held accountable for all "ramifications of the plan which could [ ] be reasonably foreseen." This concept unquestionably applies to enhancement of base offense levels under U.S.S.G. § 2D1.1(b). Section 1B1.3(a) of the guidelines says that specific offense characteristics—possession of a firearm during the offense, *e.g.*—shall be determined on the basis of all acts and omissions for which the defendant would be "accountable." The application notes accompanying § 1B1.3, as we shall see shortly, make it clear that a defendant convicted of conspiracy is accountable for conduct in furtherance of the conspiracy if the conduct was "reasonably foreseeable" by the defendant. See *United States v. Williams*, 894 F.2d 208, 211 (6th Cir.1990) ("the act of possessing a firearm is attributable to a co-conspirator not present at the commission of the offense as long as it constitutes reasonably foreseeable conduct"). The district court concluded here that it was reasonably foreseeable that members of the drug trafficking conspiracy would carry weapons in order to protect themselves and the activity in which they were engaged, and on the particular facts of this case, we cannot say that the court's conclusion was clearly erroneous.

■ The Government has not satisfied the test with respect to Mr. Irby. Unlike his co-defendants, Irby did not plead guilty to conspiracy. Although this distinction would be irrelevant under the current version of the Sentencing Guidelines,[3] the version in effect when the crimes at issue here were committed makes the distinction an important one:

"Unless otherwise specified, ... specific offense characteristics [such as the firearm enhancement in § 2D1.1(b) ] ... shall be determined on the basis of the following:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable

. . . . .

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts [e.g., drug offenses], all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;

. . . .

*Application Notes:*

1. Conduct 'for which the defendant is otherwise accountable,' as used in subsection (a)(1), includes conduct that the defendant counseled, commanded, induced, procured, or willfully caused.... *If the conviction is for conspiracy,* it includes conduct in furtherance of the conspiracy that was known to or was reasonably foreseeable by the defendant....

2. 'Such acts and omissions,' as used in subsection (a)(2), refers to acts and omissions *committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable.*"

U.S.S.G. § 1B1.3(a)(1)–(2) and Application Notes 1 and 2 (January 15, 1988) (emphasis supplied).

Because Mr. Irby's conviction was not for conspiracy, these guidelines require the Government to do more than show that another defendant's possession of the weapon was reasonably foreseeable; the Government must demonstrate that Mr. Irby possessed the weapon himself or that he aided and abetted the possession of the firearm by another. No such showing having been made, we must vacate Mr. Irby's

---

**3.** The application notes to the current version of § 1B1.3 provide, in pertinent part, as follows: "In the case of criminal activity undertaken in concert with others, *whether or not charged as a conspiracy,* the conduct for which the defendant 'would be otherwise accountable' [within the meaning of § 1B1.3(a)(1) ] also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, Application Note 1 (November 1, 1990) (emphasis supplied).

sentence and remand his case for resentencing.

### B

■ Although the Government proved that the firearm was "possessed" by Messrs. Tisdale and Fullilove and was "connected to the offense," Tisdale and Fullilove maintain that the district court still erred in applying the two-level enhancement because the prosecution did not prove the existence of a third element: scienter. To support this argument, they rely upon § 1B1.3(a)(4). Before it was amended on November 1, 1989, this section provided, in pertinent part:

> "(a) Unless otherwise specified, ... specific offense characteristics ... shall be determined on the basis of the following: ....
> (4) *the defendant's state of mind,* intent, motive and purpose in committing the offense; ...." (Emphasis supplied.)

The defendants also rely upon *United States v. Burke,* 888 F.2d 862, 867 (D.C.Cir. 1989), a nonconspiracy case that construed this version of the guideline to mean that the firearm enhancement in § 2D1.1(b) is not to be applied unless the Government proves scienter.

We have no quarrel with the holding in *Burke,* but *Burke* does not fit the facts of the case before us. Although it was defendant Toombs who filled out the paperwork attendant on the purchase of the gun in this case, both Toombs and Tisdale said that they were the purchasers. The gun was found in a bedroom used by Tisdale, and Tisdale admitted that the weapon was under his dominion and control. These facts are clearly sufficient to show scienter on Tisdale's part.

■ As to Fullilove, we have already seen that the applicability of the firearm enhancement provision in § 2D1.1(b) must be determined on the basis of conduct for which Fullilove was "accountable." U.S.S.G. § 1B1.3(a)(1). Because Fullilove's

conviction (unlike that of the defendant in *Burke*) was for conspiracy, Fullilove was accountable for conduct in furtherance of the conspiracy as long as such conduct "was reasonably foreseeable by [him.]" Application Note 1 to U.S.S.G. § 1B1.3(a)(1). The district court found that Tisdale's possession of the gun was reasonably foreseeable by Fullilove, and under the facts presented (the co-conspirator having possessed the firearm in furtherance of a conspiracy with which Fullilove was charged, and Fullilove having been a member of the conspiracy at the time of the possession), that was sufficient to justify the two-level increase under U.S.S.G. § 2D1.1(b). *Williams,* 894 F.2d at 211. *Cf. United States v. Otero,* 890 F.2d 366, 367 (11th Cir.1989) ("Sentence enhancement for a co-conspirator's firearms possession is proper if three conditions are met: first, the possessor must be charged as a co-conspirator; second, the co-conspirator must be found to have been possessing a firearm in furtherance of the conspiracy; and third, the defendant who is to receive the enhanced sentence must have been a member of the conspiracy at the time of the firearms possession").

### III

■ We turn next to Mr. Irby's claim that he was deprived of his Sixth Amendment right to be represented by counsel during his presentence interviews. This claim raises a question of first impression in this circuit.[4]

The Supreme Court's decision in *Kirby v. Illinois,* 406 U.S. 682, 690, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972), teaches that the right to counsel only attaches during a "critical stage of the prosecution." Because the probation officer does not act on behalf of the prosecution, those circuits to consider the issue have concluded—even under the new regime created by the Sentencing Guidelines—that a presentence interview in a non-capital case is not a "critical stage" within the meaning of *Kirby.*

4. Our prior decision in *United States v. Saenz,* 915 F.2d 1046, 1049 (6th Cir.1990), expressly

declined to reach the issue.

See *United States v. Woods*, 907 F.2d 1540, 1543 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 792, 112 L.Ed.2d 854 (1991); *United States v. Jackson*, 886 F.2d 838, 844–845 (7th Cir.1989); *see also United States v. Johnson*, 935 F.2d 47 (4th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 609, 116 L.Ed.2d 632 (1991) (dicta). No circuit has adopted the contrary position.[5]

We agree with the prevailing analysis and, in particular, with Judge Kanne's well-reasoned opinion in *United States v. Jackson.* Although the Sentencing Guidelines have increased the importance of the probation officer's report, in non-capital cases such as this one the presentence interview does not represent a "critical stage of the prosecution."

The Ninth Circuit, while not reaching the constitutional question, has exercised its supervisory powers to "direct that probation officers be required to permit defendants' counsel to accompany their clients at the presentence interview." *United States v. Herrera–Figueroa*, 918 F.2d 1430, 1437 (9th Cir.1990) (as amended on February 5, 1991). We agree that a rule "requiring probation officers to honor a defendant's request that his attorney be permitted to accompany him to the presentence interview will do much to ensure fairness at a minimal cost to the system." *Id.* at 1434. If a defendant requests the presence of counsel—or if an attorney indicates that his client is not to be interviewed without the attorney being there—the probation officer should honor the request.

In the case at bar, probation officer Larry England met with Mr. Irby on three occasions, two of which occurred without the presence of counsel. Nothing in the record indicates that Mr. Irby ever requested the presence of his attorney, however, or that the attorney ever notified Mr. England that no interviews were to be conduct-

ed in his absence. Accordingly, we decline to vacate Mr. Irby's sentence on this ground.

## IV

The remaining issues raised by the defendants need not detain us long.

■■■ All three defendants claim that the district court erred in failing to award them a two-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, and Messrs. Irby and Tisdale maintain that the court erred in failing to award them a reduction for their allegedly mitigating role in the offense pursuant to U.S.S.G. § 3B1.2. These matters are reviewed under the "clearly erroneous" standard, *United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989), and we see no clear error here.

Messrs. Irby and Fullilove contend that putting the burden on defendants to prove mitigating factors violates the Due Process Clause, but this claim has been foreclosed by our decision in *United States v. Rodriguez*, 896 F.2d 1031, 1032–1033 (6th Cir. 1990).

■■■ Mr. Fullilove asserts that requiring a defendant to demonstrate his minor role in the offense violates the Sixth Amendment right to compulsory process because the only witnesses are likely to be his codefendants. The argument is not persuasive. It is well settled that the Sixth Amendment's guarantee of compulsory process does not overcome a witness' Fifth Amendment privilege against self-incrimination. See, for example, *Roussell v. Jeane*, 842 F.2d 1512, 1516 (5th Cir.1988).

■■■ Mr. Irby maintains, finally, that the Sentencing Guidelines run afoul of the Due Process Clause because they permit a probation officer to prepare a presentence

---

5. The Ninth Circuit held in 1982 that there was no Sixth Amendment right to counsel during a routine presentence interview, see *United States v. Baumann*, 692 F.2d 565, 578 (9th Cir.1982), but that court has expressly reserved the question whether *Baumann* should be applied after the effective date of the Sentencing Guidelines. See *United States v. Herrera–Figueroa*, 918 F.2d 1430, 1433 (9th Cir.1990) (as amended on Feb-

ruary 5, 1991). The Second, Tenth, and Eleventh Circuits have left the issue unresolved. See *United States v. Cortes*, 922 F.2d 123, 127–128 (2d Cir.1990); *United States v. Rogers*, 921 F.2d 975, 978 n. 7 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 113, 112 L.Ed.2d 83 (1990); *United States v. Simpson*, 904 F.2d 607, 611 (11th Cir.1990).

report from notes rather than from a verbatim transcript. As the Supreme Court has explained, however, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). After a presentence report is prepared, copies of the report must be given to the defendant and his counsel at least 10 days before sentencing; the defendant must be given an opportunity to present objections to the report; and the court must make a factual finding as to each alleged inaccuracy in the report that might be taken into account in sentencing. Rule 32, Fed.R.Crim.P. Given these procedural protections, the fact that probation officers may work from notes rather than from a verbatim transcript does not violate the "fundamental fairness" that is the "touchstone of due process." *Gagnon v. Scarpelli,* 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973).

Mr. Irby's sentence is VACATED and his case is REMANDED for resentencing without the firearm enhancement. The sentences are AFFIRMED in all other respects.

NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.

Although I concur in much of the majority's well-reasoned opinion, I write separately to voice my concerns over application of the firearm enhancement under U.S.S.G. § 2D1.1(b) to defendant Fullilove.[1] Because the district court failed to articulate the factual grounds undergirding its conclusion that Fullilove reasonably should have foreseen that his coconspirator Tisdale possessed the weapon at issue, I believe we should remand this aspect of Fullilove's sentence back to the district court for further consideration.

My review of the record reveals no factual basis for imputing the firearm possession to Fullilove. Tisdale's .25 caliber pistol was found inside Tisdale's luggage, hidden in a bedroom closet of the apartment. At Fullilove's sentencing hearing, Officer Larry Clendinen testified that he was unaware of any evidence suggesting that Fullilove knew that Tisdale's pistol was on the premises. J.A. at 153. Indeed, in its brief to this Court, the United States conceded "that Fullilove was never seen with a gun on his person or in his possession and ... [the] officers had no evidence to show that Fullilove knew the gun was present in the apartment...." Brief for Appellee at 8.

Nevertheless, the majority affirms Fullilove's sentence, apparently in deference to the district court's finding that Tisdale's possession of the handgun was reasonably foreseeable. This "finding," however, is not due the deference the majority affords it. Instead of examining the factual circumstances surrounding Fullilove's participation in the conspiracy, the district court simply assumed, apparently as a matter of law, that "it is reasonably foreseeable that persons who are involved in a drug trafficking conspiracy will carry weapons in order to protect themselves and that activity." J.A. at 254.

I am deeply troubled by the implications of grafting onto the guidelines a rule establishing what amounts to an irrebuttable presumption that drug traffickers reasonably foresee that their coconspirators will carry firearms. Under this rule, a defendant in Fullilove's position is legally presumed to have foreseen that his coconspirator would carry a weapon, no matter how preposterous or absurd the claim might prove under the unique facts of the case. The issue of reasonable foreseeability should remain, in my view, sensitive to the factual context surrounding the particular conspiracy at hand. In the related context of aider and abetter liability under 18 U.S.C. § 924(c)(1) (1988), which prohibits the use or carrying of a firearm in the

1. Fullilove was convicted and sentenced under the guidelines prior to their amendment in November, 1989. I therefore leave for another day consideration of whether I would reach the same result under more recent versions of the guidelines.

942

commission of a drug offense, the District of Columbia Circuit stated:

> [E]ven if guns were shown to be a part of an overwhelming majority of drug operations, not all drug traffickers—or drug trafficking contexts—are alike. We suspect, for example, that many a college dealer gets along without firearms. Without evidence of the prevalence of guns in a particular context, no jury can reasonably infer that someone operating in that context knows that his associates will carry a gun.

*United States v. Powell,* 929 F.2d 724, 729 (D.C.Cir.1991).

Application of U.S.S.G. § 2D1.1(b)(1) must be limited to cases where possession by a coconspirator was reasonably foreseeable as a factual matter in order to keep this provision from becoming a strict liability sentence enhancement for all drug trafficking conspiracies in which any member, no matter how remote, is found to have possessed a weapon. The reasoning adopted by the district court in Fullilove's case ignored the vital factual component inherent in the "reasonable foreseeability" standard. I would therefore hold that, before applying the firearm enhancement provision to a conspirator, the district court must make a case-specific determination that the defendant knew or reasonably should have foreseen that his coconspirator possessed a weapon in furtherance of the offense. *Cf. United States v. Fiala,* 929 F.2d 285, 289 (7th Cir.1991) (interpreting pre-November 1989 guidelines to hold that § 2D1.1(b)(1) should not be applied absent a showing that the coconspirator had knowledge of the weapon in question). Because in my view the district court failed to engage in this factual inquiry, I would remand this aspect of Fullilove's sentence for further consideration.