**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Viken BENLIAN, Defendant–Appellant.**

No. 94–50130.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1995.

Decided Aug. 10, 1995.

Donald C. Randolph, Randolph & Levanas, Santa Monica, CA, for defendant-appellant.

Ronald L. Cheng and Michael Reese Davis, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

Before: HALL and Edward LEAVY, Circuit Judges, and HOGAN,* District Judge.

LEAVY, Circuit Judge:

In this appeal we must determine whether a defendant's refusal to be interviewed by a probation officer gives rise to a Sixth Amendment claim of ineffective assistance of counsel, when that refusal was based on defense counsel's failure to schedule a time to be present for such an interview. For the reasons which follow, we conclude on the facts of this case that no Sixth Amendment violation occurred.

## FACTS AND PRIOR PROCEEDINGS

In April 1992, Viken Benlian ("Benlian") opened a phony auto accessory store called The Rim Shop in Colton, California. The Rim Shop had a credit card point-of-sale terminal ("POST") for electronically entering credit card purchases. Using stolen credit card numbers, Benlian entered more than $20,000 in false purchase transactions until his POST was terminated in June 1992. Immediately thereafter, Benlian recruited several individuals to set up other phony auto repair and accessory shops (viz., Rim Shop, One Stop Rim Shop, Discount Auto Accessories, and S & K Auto Accessories) in Rancho Cucamonga and La Puente, California, for the purpose of obtaining new POSTs.

Using stolen credit card numbers obtained on the black market, the co-conspirators entered hundreds of false purchase transactions on the POSTs. The amounts of these phony purchases were then deposited and subsequently transferred to various bank accounts before being withdrawn as cash. In less than three months, the co-conspirators had attempted to enter more than $2 million in fraudulent purchases on their POSTs, and had obtained more than $300,000 in cash.

Federal authorities arrested three of the co-conspirators in January 1993, and charged them with use of an unauthorized access device, in violation of 18 U.S.C. § 1029(a)(2).[1] As the result of information obtained from the three co-conspirators, an arrest warrant was issued the following month for Benlian. After two failures to keep his promises to turn himself in, Benlian was finally arrested on February 15, 1993. A fourth co-conspirator was arrested the following month.

On February 25, 1993, a federal grand jury handed down a three-count indictment charging Benlian with one count of conspiracy (18 U.S.C. § 371)[2] and two counts of using an unauthorized access device (18 U.S.C. § 1029(a)(2)). On the Friday before trial was scheduled to begin, Benlian entered into an agreement with the government, pursuant to which he pleaded guilty to counts 1 and 3, and the government dropped the second count. Sentencing was scheduled for August 9, 1993.

Benlian's lawyer apparently advised his client not to talk to any representative of the Probation Office ("PO") without counsel being present. Unfortunately, the attorney went on vacation to Europe shortly after Benlian pleaded guilty and just before the PO started work on Benlian's Presentence Investigative Report ("PSR"). When the PO's efforts to reach Benlian's lawyer proved unavailing, the PO sought to interview Benlian without his attorney being present. Benlian refused to be questioned in the absence

---

* The Honorable Michael Hogan, Chief Judge of the United States District Court for the District of Oregon, sitting by designation.

1. "Whoever ... knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period[,] ... shall, if the offense affects interstate ... commerce, be punished as provided in subsec-

tion (c) of this section." 18 U.S.C. § 1029(a)(2) (in relevant part).

2. "If two or more persons conspire ... to commit any offense against the United States ... and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined ... or imprisoned not more than five years, or both." 18 U.S.C. § 371 (in relevant part).

of counsel, so the PO drafted its PSR without the benefit of an interview. Upon his return from vacation, Benlian's lawyer sought to have the PO withdraw its PSR and prepare a new report, based on an interview with counsel present, but nothing ever came of this.

After granting two continuances, the court held Benlian's sentencing hearing on February 7, 1994. At the conclusion of the hearing, the court rejected Benlian's arguments that (1) he should not receive a four-level upward adjustment for his leadership role in the offense (based on the court's determination that Benlian had organized the conspiracy with at least six others); (2) he should not receive a two-level upward adjustment for obstruction of justice (based on the court's finding that Benlian had lied to authorities and threatened one of his co-defendants); and (3) he should not be denied a three-level downward adjustment for acceptance of responsibility (based on the court's conclusion that Benlian had attempted to minimize his important role in the offense). The court then ordered Benlian to pay restitution to several victims, imposed a fine of $7,500, and sentenced him to 46 months in prison, to be followed by three years of probation. Benlian has timely appealed, arguing that the district court misapplied the Sentencing Guidelines as the result of the ineffective assistance of his defense counsel.

## ANALYSIS

### Standard of Review

We review *de novo* a district court's interpretation and application of the Sentencing Guidelines. *United States v. Naranjo,* 52 F.3d 245, 250 (9th Cir.1995). We examine for clear error any factual findings underlying the sentence imposed. *Id.*

A Sixth Amendment claim of ineffective assistance of counsel raises mixed questions of fact and law that are subject to *de novo* review. *United States v. Davis,* 36

F.3d 1424, 1433 (9th Cir.1994) (as amended), *cert. denied,* —— U.S. ——, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995). In examining such a claim,

> We must determine (1) whether the performance of counsel was so deficient that he was not functioning as "counsel" as guaranteed under the Sixth Amendment; and (2) whether this deficient performance prejudiced the defendant by depriving him of a fair trial. In determining whether counsel's performance was deficient, we apply an objective standard of reasonableness, indulging a strong presumption that a counsel's conduct falls within the wide range of reasonable professional assistance.

*Davis,* 36 F.3d at 1433 (citations omitted).

### Discussion[3]

Benlian does not argue that the district court failed to weigh carefully all of the evidence produced at the sentencing hearing, nor does he contend that the court ignored either his objections to the PSR or his signed statement downplaying his role in the offense. Neither does Benlian argue that he was denied the ability to testify on his own behalf, nor does he contend that defense counsel was unable to cross-examine aggressively the witnesses who testified against him. Instead, Benlian urges us to hold that his lawyer's failure to schedule a presentence interview constituted a denial of counsel at a critical stage of the adversary proceedings, and was so egregiously prejudicial that ineffective assistance of counsel should be presumed. We reject this contention.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that a successful ineffective assistance claim requires proof of both deficient performance by counsel and resultant prejudice. 466 U.S. at 691–92, 104 S.Ct. at 2067. In *United States v. Cronic,* 466 U.S.

---

**3.** At the outset it should be noted that "claims of ineffective assistance of counsel are better addressed in collateral proceedings under 28 U.S.C. § 2255." *Davis,* 36 F.3d at 1433. "However, we may review such claims on direct appeal if (1) the record is sufficiently developed to permit review and determination of the issue or

(2) the legal representation is so inadequate that the defendant was obviously denied his Sixth Amendment right to counsel." *Id.* Benlian argues, and the government concedes, that direct review is appropriate here, because the issue is sufficiently documented.

648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), decided at the same time as *Strickland*, the Court noted that some types of ineffective assistance are so egregious that prejudice should be presumed, because "the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658 (footnote omitted).

*Cronic*'s exception to *Strickland*'s prejudice requirement is based not so much on timing (i.e., whether or not the conduct complained of occurred at a critical stage of the adversary proceedings) as on the nature of the attorney's misconduct. *See Cronic*, 466 U.S. at 659–60, 104 S.Ct. at 2047 (presumption of prejudice occurs when there is a complete denial of counsel "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or when circumstances are such that no attorney could provide effective assistance). *See also Frazer v. United States*, 18 F.3d 778, 785 (9th Cir.1994) (prejudice presumed when counsel called defendant racial epithet and threatened to provide ineffective assistance if defendant insisted on going to trial); *United States v. Swanson*, 943 F.2d 1070, 1075–76 (9th Cir.1991) (prejudice presumed when counsel effectively conceded defendant's guilt during closing argument).

■ Of course, a defendant can only obtain reversal on Sixth Amendment grounds if the error complained of occurred at a critical stage in the adversary proceedings. This is true because the Sixth Amendment guarantees the right to counsel only at critical stages. *See, e.g., Kirby v. Illinois*, 406 U.S. 682, 690, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972); *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967). It therefore follows that, if the stage is not critical, there can be no constitutional violation, no matter how deficient counsel's performance. *See, e.g., Wainwright v. Torna*, 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301, 71 L.Ed.2d 475 (1982) (per curiam); *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994).

In *Baumann v. United States*, 692 F.2d 565 (9th Cir.1982), we declared that a presentence interview does not constitute a critical stage of the adversary proceedings. *Id.* at 577–78. Benlian insists that *Baumann* is no longer good law, however, because it antedates the implementation of the Sentencing Guidelines and was heavily qualified by *United States v. Herrera–Figueroa*, 918 F.2d 1430 (9th Cir.1991) (as amended). We disagree.

■ In *Herrera–Figueroa* we exercised our supervisory powers to vacate a sentence, based on our conclusion that the defendant had been denied his right to counsel as the result of the probation officer's refusal to allow the defendant's attorney to be present in order to advise the defendant at his presentence interview. Here, by way of contrast, there was no denial of any right to counsel as the result of any action or policy on the part of the PO; rather, Benlian and his lawyer effectively waived the right to a presentence interview by failing to schedule a time when both could, and would be willing to, attend such an interview.[4] *See United States v. Cortes*, 922 F.2d 123, 127–28 (2d Cir.1990) (counsel knew of need for interview but failed to show; Sixth Amendment not implicated because counsel was not excluded from interview, and defendant was not forced to be interviewed without counsel present). *Cf. United States v. Mezzanatto*, — U.S. —, —, 115 S.Ct. 797, 801, 130 L.Ed.2d 697 (1995) (most rights, constitutional or otherwise, are subject to waiver).

■ Even in the absence of waiver, we would reject Benlian's argument because the presentence interview is not a critical stage of the adversary proceedings, whether viewed in the context of pre- or post-Guideline law. As we did in *Baumann*, every other Circuit to have confronted the question has rejected the notion that the presentence interview constitutes a critical stage in the adversary proceedings. *See United States v. Washington*, 11 F.3d 1510, 1517 (10th Cir. 1993), *cert. denied*, — U.S. —, 114 S.Ct.

---

4. This does not mean that we condone trial counsel's failure to schedule a time to be present for the presentence interview; we simply decline to hold that such conduct constitutes a *per se* deficiency violative of the Sixth Amendment.

1404, 128 L.Ed.2d 76 (1994); *United States v. Bounds,* 985 F.2d 188, 194 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 135, 126 L.Ed.2d 99 (1993); *United States v. Tisdale,* 952 F.2d 934, 940 (6th Cir.1992); *United States v. Johnson,* 935 F.2d 47, 50 (4th Cir.), *cert. denied,* 502 U.S. 991, 112 S.Ct. 609, 116 L.Ed.2d 632 (1991); *United States v. Jackson,* 886 F.2d 838, 844–45 (7th Cir.1989).

Moreover, dictum in decisions from three other Circuits implies that they, too, would reject the notion that the presentence interview constitutes a critical stage in the adversary proceedings. *See United States v. Ocasio–Rivera,* 991 F.2d 1, 3 n. 3 (1st Cir.1993) (citing with apparent approval decisions from Fourth, Fifth, Sixth, and Seventh Circuits); *Cortes,* 922 F.2d at 127–28 (counsel knew of need for interview but failed to show; Sixth Amendment not implicated because counsel was not excluded from interview, and defendant was not forced to be interviewed without counsel present); *United States v. Simpson,* 904 F.2d 607, 611 (11th Cir.1990) (although defendant waived issue by not timely asserting it before district court, panel cited to rejection cases with apparent approval).

In light of the above, we hold that no Sixth Amendment violation occurred, and no grounds exist that would warrant the exercise of our supervisory powers in favor of Benlian. Because the district court fairly based its sentencing decision on the evidence before it, we reject Benlian's contention that he should be granted a new sentencing hearing, a new PSR, and a (new) presentence interview.

## CONCLUSION

The decision appealed from is AFFIRMED.