[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15285
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 18, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00503-CR-4-VEH-HGD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARL LEE HYATT, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 18, 2010)

Before BLACK, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Carl Lee Hyatt, Jr., appeals from the district court's order denying his motion to suppress evidence seized from his home. On appeal, Hyatt argues that the district court erred by failing to hold a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) to evaluate the veracity of the allegations set forth in the affidavit that Officer Teri Farris executed in support of a search warrant. Specifically, Hyatt argues that the allegations in Farris's affidavit were based on information that Farris received from his girlfriend, Judy Ball. Hyatt contends that the information that Ball provided to Farris was false, and asks us to remand this case and direct the district court to conduct a *Franks* hearing, so that he may cross-examine Ball.

Hyatt also argues that the district court erred in denying his motion to suppress, asserting that the court erroneously found that the Fourth Amendment was not implicated when Ball showed his computer files to Farris and Officer Roger Dale. Hyatt contends that Ball acted as a government agent when she showed his computer files to the officers because they "tacitly encouraged" her search of his computer. Finally, Hyatt asserts that, even though Ball may have consented to let the officers view his computer files, Ball lacked actual authority to give this consent, and the officers could not have reasonably believed that Ball possessed authority to consent to their viewing his computer files.

2

For the reasons set forth below, we affirm.

**I.**

A federal grand jury indicted Hyatt, charging him with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Hyatt subsequently filed a motion to suppress, requesting that the court suppress any evidence obtained from a search of his home that occurred on July 8, 2006, and from a search of his computer that occurred on or about October 17, 2006. In his motion, Hyatt argued that, while his girlfriend, Judy Ball, may have purported to give police officers consent to view files on his computer, this consent was not valid because Ball did not have permission to access his computer.

The government responded to Hyatt's motion, and attached the search warrant to its response. In addition, the government also attached the warrant's supporting affidavit, which was executed by Farris. In her affidavit, Farris advised that she and at least one other officer had responded to a call at 612-A Randall Street on July 6, 2008. After Farris arrived at the residence, Ball advised Farris that the computer that she shared with her live-in boyfriend contained images of what she believed to be child pornography. Ball had specified that, while on the computer, she saw an image of a nude female who appeared to be younger than 16. Ball informed Farris that, in the image, the female's genitals were exposed. In

3

addition, Ball stated that she saw files with titles suggesting that they depicted sexual activity involving children 13 years old and younger.

The magistrate judge held a hearing regarding Hyatt's motion to suppress. At the hearing, Dale, a Gadsden city police detective, testified that on July 8, 2006, he received a call directing him to visit 612-A Randall Street in order to investigate a possible discovery of child pornography. When Dale arrived at that address, Ball greeted him and allowed him to enter the residence. She informed him that she lived there with her boyfriend. Ball further informed Dale that she had discovered images of what she believed to be child pornography on a computer. Dale did not ask Ball whether Ball had permission to access this computer but, based on his general observations, he had believed that she had authority to access the computer.

Dale further testified that Ball then showed him a small "thumbnail" image on the computer. Dale observed that this image depicted a young, nude female. Dale could not determine whether the thumbnail image actually depicted a child. He asked the police department to send to the residence an officer who specialized in cases involving juveniles. Dale remained at the residence until another officer arrived. During the time that he and Ball waited for the other officer, Dale did not direct Ball to look for additional images, and did not personally search the

4

computer. Farris arrived at the residence and, after speaking with Dale and Ball, left in order to obtain a search warrant. Dale remained at the residence with Ball. During the time that he and Ball waited for Farris to return with a search warrant, Dale did not ask Ball to search the computer, and did not personally search the computer. On cross-examination, Dale clarified that, when Ball showed him the image of the young girl, the image already was displayed on the computer screen.

Farris, a Gadsden city police officer assigned to the department's juvenile division, testified that she received a call on July 8, 2006, directing her to visit 612-A Randall Street. Upon her arrival, Farris was informed that Ball and her boyfriend lived at the residence. Ball told Farris that she and her boyfriend "shared" a computer, and that she recently had discovered that the computer contained images of girls who appeared to be minors. Ball then showed the computer to Farris. When Farris first saw the computer, she observed that it was already turned on. Farris further observed that the computer monitor displayed thumbnail-sized images of nude individuals. She did not touch the computer. Instead, Ball clicked on the images displayed on the screen in order to show Farris the titles of the images. Farris recalled that these titles were graphic, and included references to pictures of girls under the age of 13, incestuous activities with girls as young as 5 years old, and the word "pedo," which was short for the word

5

"pedophile." Ball could not open larger versions of the thumbnail images because these files were locked, *i.e.*, protected by passwords. Farris did not ask Ball to try to open these images, and did not direct Ball to conduct a search of the computer. After seeing the graphic titles of the images on the computer, Farris decided to seek a search warrant. After obtaining a warrant, she returned to 612-A Randall Street and seized the computer's hard drive, as well as information-storing devices such as CD's, DVD's, and a jump drive.

On cross-examination, Farris testified that, at the time that she spoke with Ball, Farris was not aware of any information indicating that access to the computer was protected by a password, or that Ball had gained access to the computer by bypassing its security devices. Farris clarified that, although she had observed that the thumbnail images depicted nude individuals, the small size of the images prevented her from discerning the ages of the individuals depicted. According to Farris, the only indication that these images constituted child pornography were the titles of the images. Farris recalled that Ball verbally consented to Farris's entry into her home, and also consented to let Farris look at the computer. During cross-examination, Hyatt did not question Farris about the affidavit that she had executed in support of the search warrant.

After the conclusion of Farris's testimony, Hyatt argued that Ball did not

6

have permission to access the computer. In support of this assertion, Hyatt presented the testimony of Danny Lee Garnett, a FBI special agent. Garnett testified that, in an interview with FBI agents, Ball had stated that she had limited access to Hyatt's computer, and that Hyatt permitted her to use the computer only when he was at home. She rarely used the computer, and could use the computer only after Hyatt unlocked it with his password. In order to access Hyatt's computer on July 8, Ball had called a friend who was familiar with computers, and this friend had instructed Ball as to how to access the computer without entering a password.

After the conclusion of Garnett's testimony, Hyatt again argued that Ball had lacked authority to consent to a search of his computer. Hyatt asserted that it was questionable whether the officers had believed, in good faith, that Ball had the authority to consent to a search of his computer.

The magistrate noted that, in Farris's affidavit, she averred that Ball had advised that she had observed an image on Hyatt's computer that depicted a nude female who appeared to be under the age of 16. The magistrate expressed concern that some of the testimony presented at the hearing indicated that it was not possible to discern anything from the pictures, apart from the fact that one of them depicted a nude individual. The magistrate stated that, if the information in the

7

affidavit was false, the parties could face a *Franks* issue. Although the government requested that the magistrate continue the hearing so that the government could subpoena Ball's testimony, Hyatt did not make a similar request.

The magistrate issued a report and recommendation, recommending that the district court deny Hyatt's motion to suppress. The magistrate found that Ball had acted as a private individual when she searched Hyatt's computer, and that the search thus did not implicate the Fourth Amendment. In support of this finding, the magistrate reasoned that neither Dale nor Farris touched the computer or directed Ball to conduct a search. The magistrate determined that, because Ball's search did not implicate the Fourth Amendment, the Fourth Amendment did not restrain the officers from using the evidence that Ball gave to them to obtain a search warrant. Although the magistrate did not expressly state whether Dale and Farris reasonably relied on Ball's apparent consent to view the thumbnail images and image titles, the magistrate found that Ball had informed the officers that she and Hyatt shared the residence and the computer. In addition, the magistrate found that the fact that Ball lacked the password necessary to open certain files on the computer did not demonstrate that she generally lacked access to the computer—instead, it merely demonstrated that she lacked the authority to open certain files.

In the report and recommendation, the magistrate did not address whether a *Franks* hearing was warranted, or whether Ball's testimony would be helpful in deciding Hyatt's motion to suppress. The magistrate did find, however, that, in her affidavit, Farris stated only that Ball had informed her that she had observed the image of a nude minor on Hyatt's computer, and that Farris had not alleged in her affidavit that she personally saw an image that depicted a nude minor. The magistrate further found that, even ignoring Ball's statement that she observed child pornography on Hyatt's computer, Farris still possessed probable cause sufficient to obtain a search warrant because she had observed that Hyatt's computer contained images that were associated with titles suggestive of child pornography.

Over Hyatt's objections, the court adopted the magistrate's report and recommendation. Hyatt subsequently pled guilty to the offense, and was sentenced to 41 months' imprisonment.

## II.

"An issue raised for the first time on appeal is reviewed for plain error." *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009). "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and

9

(4) that seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Id.* at 1244-45 (quotation omitted). In order for an error to be obvious for purposes of plain error review, "it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule." *United States v. Lett*, 483 F.3d 782, 790 (11th Cir. 2007). Because Hyatt did not request that the district court hold a *Franks* hearing, or assert that Farris knowingly or recklessly made a false statement or omission in her affidavit, plain-error review applies to his *Franks* argument on appeal.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation." U.S. Const. amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Id.* "Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution." *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).

Affidavits supporting arrest warrants are presumptively valid. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. A defendant may, however, challenge an affidavit on the basis that the affiant made a materially false statement or omission. *See id.* In order to obtain an evidentiary hearing regarding the veracity of the affiant's statement, the defendant must make a "substantial preliminary showing" that the affiant made the false statement or omission "either intentionally or with reckless disregard for the truth." *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009). "The challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. The defendant should specifically point out the false statements or omissions, explain why the statement or omission constitutes a falsity or demonstrates a reckless disregard for the truth, and support his allegation with an affidavit or other sworn statement by a witness. *See id.* "Allegations of negligence or innocent mistake are insufficient." *Id.* "The deliberate falsity or reckless disregard whose impeachment is permitted [] is only that of the affiant, [and not that] of any nongovernmental informant." *Id.* In addition, "[t]he defendant bears the burden of showing that, absent those misrepresentations or omissions, probable cause would have been lacking. *Kapordelis*, 569 F.3d at 1309 (quotation omitted). "Probable cause to support a search warrant exists when the totality of the

11

circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 1310 (quotation omitted).

The district court did not plainly err by failing to hold a *Franks* hearing because Hyatt did not make a substantial preliminary showing that the affiant, Farris, knowingly or recklessly omitted information from her affidavit. Significantly, during Hyatt's cross-examination of Farris at the suppression hearing, he failed to ask any questions regarding the veracity of the statements that she made in her affidavit. As a result, although Farris's affidavit would have been more complete if it had included information that she and Dale were unable to verify that the thumbnail images on Hyatt's computer depicted minors, Hyatt did not present any evidence showing that this omission resulted from deceptive intent or recklessness, rather than mere negligence. Moreover, while Hyatt contends that the information that Ball provided to Farris was "dubious," and asserts that he should have been able to cross-examine Ball, *Franks* expressly provides that the proper target of a hearing is the affiant, and not a non-governmental informant. Accordingly, Hyatt has failed to show that the district court committed error, let alone plain error, by failing to conduct a *Franks* Hearing.

**III.**

12

"We review a district court's denial of a motion to suppress evidence as a mixed question of law and fact, with rulings of law reviewed *de novo* and findings of fact reviewed for clear error." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007). In addition, we view the facts "in the light most favorable to the prevailing party in [the] district court." *Id.*

The Fourth Amendment proscribes only governmental action—accordingly, it does not apply to a search conducted by a private individual, even if that search constitutes an invasion of another individual's privacy. *Jacobsen*, 466 U.S. at 113, 104 S.Ct. at 1656. The Fourth Amendment is implicated, however, where a private individual acts as a government agent or instrument. *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003). In order to determine whether an individual acted as a private citizen or a government agent, a court should consider the following two factors: "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." *Id.* Where an individual conducts a private search and places the results of the search on display, government agents do not exceed the scope of the initial private search merely by viewing the displayed evidence. *See United States v. Simpson*, 904 F.2d 607, 609-10 (11th Cir. 1990).

13

Police officers may conduct a warrantless search if "they first obtain the voluntary consent of the individual in question." *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989). An individual properly may consent to the search of an area or of an item over which she has common authority or control. *United States v. Backus*, 349 F.3d 1298, 1299 (11th Cir. 2003). Even if a consenting individual lacks actual authority over an area or an item, there is no Fourth Amendment violation where officers reasonably believe that the individual has such authority. *United States v. Mercer*, 541 F.3d. 1070, 1074 (11th Cir. 2008). The determination of whether officers reasonably believed that an individual possessed authority to consent to a search "must be judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Id.* (quotation and alteration omitted).

Here, the evidence demonstrated that Ball acted as a private citizen when she searched Hyatt's computer, and not as a government agent. Ball discovered the thumbnail images and suggestive images titles before she called the police. Accordingly, the police were not aware of Ball's search at the time that it occurred. Dale and Farris both testified that they did not touch Hyatt's computer, and that they did not ask Ball to open any files or search the computer. While Hyatt alleges

14

that Dale and Farris "tacitly" encouraged Ball's search, he does not point to any evidence indicating that the officers encouraged Ball, or explain how their actions amounted to tacit encouragement. Rather, Dale and Farris testified that, when they arrived at Ball's and Hyatt's residence, the computer was already turned on, and the thumbnail images were already displayed on the monitor. In addition, Farris testified that Ball showed her the image titles without any prompting. As a result, the evidence showed that Dale and Farris simply observed Ball show them evidence that she had already discovered during her own private search. Because Ball searched Hyatt's computer without the knowledge or encouragement of police officers, and Dale and Farris did nothing more than observe the results of Ball's search, Ball's act of showing Hyatt's computer files to Dale and Farris did not implicate the Fourth Amendment.

Moreover, even assuming that Ball's act of showing Hyatt's computer files to Dale and Farris implicated the Fourth Amendment, Dale and Farris reasonably relied on her apparent authority to consent to their viewing of the computer files. Ball informed the officers that she shared the residence and the computer with Hyatt. The officers reasonably believed this statement, because it appeared that Ball had been able to log in to the computer and display images on its screen. While Ball lacked the password to open larger versions of the thumbnail images,

15

this fact did not demonstrate that she generally lacked access to the computer. Rather, this fact indicated only that Ball lacked access to certain files on the computer. While it may be true that Hyatt manifested his intent to keep the files associated with the thumbnail images private, Dale and Farris did not violate this expectation of privacy, as they did not ask Ball to open the files, and did not attempt to open the files themselves. In addition, while Garnett testified that Ball lacked actual authority to log in to Hyatt's computer without his permission, Hyatt does not point to any evidence indicating that Dale or Farris reasonably should have been aware of this fact.

For the reasons set forth above, the district court correctly determined that no Fourth Amendment violation occurred, because Ball did not act as a government agent when she showed Dale and Farris the results of her private search. Moreover, even if the Fourth Amendment were implicated by this act, Dale and Farris reasonably relied on Ball's apparent consent to view the images and titles on the computer screen.

**AFFIRMED.**