**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35132**

| | | |
|---|---|---|
| DERRICK LAWRENCE HUGHES, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | **2009 Opinion No. 68** |
| | ) | |
| v. | ) | **Filed: October 14, 2009** |
| | ) | |
| STATE OF IDAHO, | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Order of the district court summarily dismissing application for post-conviction relief, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Molly J. Huskey argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

GRATTON, Judge

Derrick Lawrence Hughes appeals from the summary dismissal of his application for post-conviction relief. We affirm.

**I.**

**FACTS AND PROCEDURAL BACKGROUND**

The State charged fifty-six-year-old Hughes, by indictment, with twenty-one counts arising from unlawful sexual conduct with sixteen-year-old P.M. Pursuant to a plea agreement, Hughes pled guilty to five counts of rape, Idaho Code § 18-6101(1), two counts of sexual battery of a minor, I.C. § 18-1508A, one count of disseminating material harmful to minors, I.C. § 18-1515(1)(a), and two counts of possession of sexually exploitive materials, I.C. § 18-1507A, with the State agreeing to dismiss the remaining counts. The State also agreed to recommend a unified sentence of life, with twenty-five years determinate, and Hughes was free to argue for whatever sentence he felt was appropriate.

1

Prior to sentencing, the sentencing court ordered a Psychosexual Evaluation (PSE) and a Presentence Investigation Report (PSI). As part of the PSE, Hughes also underwent a polygraph examination. At the sentencing hearing, Hughes requested leave to obtain a second PSE, which was denied. Hughes was sentenced to an aggregate unified term of life, with twenty-five years determinate. Hughes appealed, and this Court affirmed Hughes' judgment of conviction and sentence. *State v. Hughes*, 2005 Unpublished Opinion No. 633 (Ct. App. Oct. 26, 2005).

Thereafter, Hughes filed a pro se application for post-conviction relief claiming violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. Hughes also moved for appointment of counsel, which was granted. Hughes' counsel filed an amended application for post-conviction relief. The State moved for summary dismissal. After oral argument, the post-conviction court granted the State's motion. This appeal followed.

## II.

## ANALYSIS

An application for post-conviction relief initiates a proceeding that is civil in nature. *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Clark v. State*, 92 Idaho 827, 830, 452 P.2d 54, 57 (1969); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the applicant must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. I.C. § 19-4907; *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). An application for post-conviction relief differs from a complaint in an ordinary civil action. An application must contain much more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, an application for post-conviction relief must be verified with respect to facts within the personal knowledge of the applicant, and affidavits, records or other evidence supporting its allegations must be attached, or the application must state why such supporting evidence is not included with the application. I.C. § 19-4903. In other words, the application must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal.

Idaho Code § 19-4906 authorizes summary dismissal of an application for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative. Summary dismissal of an application pursuant to I.C. § 19-4906 is the procedural equivalent of summary judgment under I.R.C.P. 56. Summary dismissal is permissible only when the

2

applicant's evidence has raised no genuine issue of material fact that, if resolved in the applicant's favor, would entitle the applicant to the requested relief. If such a factual issue is presented, an evidentiary hearing must be conducted. *Gonzales v. State*, 120 Idaho 759, 763, 819 P.2d 1159, 1163 (Ct. App. 1991); *Hoover v. State*, 114 Idaho 145, 146, 754 P.2d 458, 459 (Ct. App. 1988); *Ramirez v. State*, 113 Idaho 87, 89, 741 P.2d 374, 376 (Ct. App. 1987). Summary dismissal of an application for post-conviction relief may be appropriate, however, even where the State does not controvert the applicant's evidence because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986).

On review of a dismissal of a post-conviction relief application without an evidentiary hearing, we determine whether a genuine issue of fact exists based on the pleadings, depositions, and admissions together with any affidavits on file. *Ricca v. State*, 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct. App. 1993). In post-conviction actions, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008).

Hughes raises several issues in his application for post-conviction relief, all based upon assertions of ineffective assistance of counsel. A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-conviction Procedure Act. *Murray v. State*, 121 Idaho 918, 924-25, 828 P.2d 1323, 1329-30 (Ct. App. 1992). To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177.

Hughes first claims that trial counsel was ineffective for failing to be present during the PSE. Second, Hughes contends that trial counsel was ineffective in failing to move to suppress the PSE because the polygraph results, which were incorporated into the PSE, were obtained in violation of Hughes' Fifth Amendment right to counsel. Third, Hughes argues that the district court erred in dismissing his claim that his counsel was ineffective for failing to ensure that Hughes received *Miranda*[1] warnings prior to his participation in the PSI. Fourth, Hughes asserts that his attorney was ineffective for failing to obtain an independent, confidential psychosexual evaluation prior to sentencing. Fifth, Hughes claims that his trial counsel was ineffective in failing to move to suppress the results of the polygraph test. Sixth, Hughes argues that while the district court correctly determined that Hughes' trial counsel was deficient for failing to advise Hughes regarding his rights relative to the PSE, the district court erred in its analysis of the prejudice prong.

## A. Ineffective Assistance of Counsel - Sixth Amendment Right to the Physical Presence of Counsel at the PSE and Polygraph.

Hughes claims that his attorney was ineffective because he was not present during the PSE and polygraph. Hughes argues that the Sixth Amendment guarantees the right to the effective assistance of counsel during all phases of a PSE and that the assistance of counsel necessarily includes the presence of counsel. He further asserts that a Sixth Amendment right to the presence of counsel during all phases of the PSE is necessary in order to protect his Fifth Amendment rights against self-incrimination.

The Sixth Amendment to the United States Constitution and Article I, § 13 of the Idaho Constitution, guarantee a criminal defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Ivey v. State*, 123 Idaho 77, 80, 844 P.2d 706, 709 (1992); *Aragon v. State*, 114 Idaho 758, 760-61, 760 P.2d 1174, 1176-77 (1988). This right extends to all "critical stages" of the adversarial proceedings against a defendant. *United States v. Wade*, 388 U.S. 218, 224 (1967); *Estrada v. State*, 143 Idaho 558, 562, 149 P.3d 833, 837 (2006). As set forth by the Idaho Supreme Court in *Estrada*:

> In determining whether a particular stage is "critical," it is necessary "to analyze whether potential substantial prejudice to defendant's rights inheres in the

---

[1]    *Miranda v. Arizona*, 384 U.S. 436 (1966).

particular confrontation and the ability of counsel to help avoid that prejudice."
*Wade*, 388 U.S. at 227, 87 S.Ct. at 1932, 18 L.Ed.2d at 1157.

*Estrada*, 143 Idaho at 562, 149 P.3d at 837. "[I]f the stage is not critical, there can be no constitutional violation, no matter how deficient counsel's performance." *United States v. Benlian*, 63 F.3d 824, 827 (9th Cir. 1995); *see Estrada*, 143 Idaho at 562, 149 P.3d at 837. Therefore, we must first address whether the PSE is a critical stage.

In *Estrada*, the Court held that the Sixth Amendment guaranteed the right to the assistance of counsel for advice regarding participation in a PSE. *Id*. Hughes asserts that in order for the *Estrada* Court to have recognized a Sixth Amendment right to the advice of counsel, it must have implicitly held that the entire process of the PSE is a critical stage and, thus, Hughes was entitled to the assistance of, including the presence of, counsel at all times during the PSE. The State argues that *Estrada*'s "critical stage" determination was only in relation to sentencing, which is acknowledged as a critical stage. *See Retamoza v. State*, 125 Idaho 792, 796, 874 P.2d 603, 607 (Ct. App. 1994) (citing *Mempa v. Rhay*, 389 U.S. 128, 134 (1967)). The State asserts that, as part of a criminal defendant's Sixth Amendment right to the assistance of counsel during sentencing, the defendant has, under *Estrada*, the limited right to the advice of counsel regarding the decision as to whether to participate in the PSE, which advice must necessarily be given prior to the conduct of the PSE and as a component of representation at sentencing. Thus, the State claims that *Estrada* did not hold that all phases of a PSE constituted a critical stage for Sixth Amendment right to counsel purposes.

The *Estrada* Court identified the issue to be addressed as follows:

> The first question presented by this case is whether a court-ordered psychosexual evaluation constitutes a critical stage of litigation at which the Sixth Amendment right to counsel applies. While neither party in this case directly raises this issue, the question is indirectly raised as a necessary precursor to the arguments presented regarding Estrada's claim for ineffective assistance of counsel.

*Estrada*, 143 Idaho at 561, 149 P.3d at 837. The Court further stated:

> This Court's finding that a Sixth Amendment right to *assistance* of counsel <u>in the critical stage of a psychosexual evaluation</u> inquiring to a defendant's future dangerousness, does not necessarily require the *presence* of counsel during the exam.

5

*Estrada*, 143 Idaho at 562, 149 P.3d at 838 (italics in original; underlining added). The underlined language may be read to support the contention that the *Estrada* Court determined that the PSE and all its phases constitute a critical stage. However, the *Estrada* Court further held that its ruling was "limited to the finding that a defendant has a Sixth Amendment right to counsel regarding *only the decision* of whether to submit to a psychosexual exam." *Estrada*, 143 Idaho at 562-63, 149 P.3d at 837-38 (emphasis added).[2] This language may be read to support the contention that the *Estrada* Court limited the critical stage, and hence a right to counsel's assistance, to only the decision to participate in the PSE. Leaving aside for the moment the question of the scope and extent of counsel's assistance and/or presence, this language raises the question of whether it is the decision to undergo the PSE, or the evaluation itself, that is the critical stage.

Assuming, first, that the critical stage is only the decision to undergo the PSE, then Hughes' claim that he was entitled to the presence of counsel at all phases of the PSE including the polygraph fails. In that case, Hughes' right to effective assistance of counsel would be, as in *Estrada*, limited to the assistance of counsel, through advice, relative to the decision to participate in the PSE. Moreover, aside from *Estrada*'s limitation of the right to counsel to only the decision to participate in the PSE, there is support for this more narrow view of the critical stage. We previously determined in *State v. Curless*, 137 Idaho 138, 44 P.3d 1193 (Ct. App. 2002), that the PSE itself was not a critical stage for Sixth Amendment purposes, which was not expressly overruled by *Estrada*. Only *Estrada* and a case which it cites, *State v. Tinkham*, 871 P.2d 1127 (Wash. App. 1994), contain language which can be read as holding that all phases of a PSE constitute a critical stage.[3] Hughes has cited no other case, and our research has revealed none, which directly holds that a psychiatric or psychosexual evaluation, performed after the

---

[2] The *Estrada* Court expressly noted that Estrada had not argued that his attorney should have been present during the PSE.

[3] However as addressed herein, neither *Estrada* nor *Tinkham* hold that a defendant is entitled to have counsel present during the evaluation. While the examination in *Tinkham* was not a PSE, but rather a general psychiatric examination, it was prepared, as in *Estrada*, for sentencing purposes.

determination of guilt and for the express purpose of sentencing, is a critical stage for Sixth Amendment purposes.[4]

While that critical stage analysis relative to pretrial psychiatric examinations may not be identical to a PSE, the test is the same.  In that context, the majority of courts have held that a pretrial psychiatric examination is not a critical stage and several courts have drawn a distinction in the critical stage analysis between the decision to undergo a psychiatric examination and the actual conduct of the examination.  In *United States. v. Byers*, 740 F.2d 1104 (D.C. Cir 1984), then Judge, now Justice, Antonin Scalia,[5] writing for the plurality, stated that in order for the Sixth Amendment to apply, "the accused must find himself 'confronted, just as at trial, by the procedural system, or by his expert adversary, or by both.'"  *Byers*, 740 F.2d at 1117-1118 (quoting *United States v. Ash*, 413 U.S. 300, 310 (1973)).  The court held that the defendant was confronted by the procedural system at the point at which he had to make decisions relative to psychiatric examination, but not the psychiatric interview itself.  The court further found that the defendant was not confronted by his expert adversary during the psychiatric interview.  The examining psychiatrist was not an "adversary" or an expert in the "relevant sense," that is, in "the intricacies of substantive and procedural criminal law." *Byers*, 740 F.2d at 1118-1120 (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)) (plurality opinion); s*ee also Commonwealth v. Trapp*, 668 N.E.2d 327, 330 (Mass. 1996) ("Although the decision to undergo psychiatric evaluation is a critical stage, *Estelle v. Smith*, *supra* at 470, 101 S.Ct. at 1876-1877, the interview itself is not.  *Byers*, *supra* at 1118-1121."); *State v. Martin*, 950 S.W.2d 20, 26 (Tenn. 1997) ("Accordingly, we agree with the courts which have distinguished the 'critical stage' prior to a psychiatric examination from the examination itself.").  Thus, as noted, if the critical stage recognized in *Estrada* was only the decision to undergo the PSE, a view consistent with the outcome of *Estrada* and the above-cited decisions, then Hughes' claim that he was entitled to the

---

[4]     The cases cited by Hughes do not so hold.  *Montejo v. Louisiana*, 129 S.Ct. 2079 (2009), involved the proper standard relating to waiver of the right to counsel.  In *Estelle v. Smith*, 451 U.S. 454 (1981), the evaluation was conducted before trial but, without notice that it could be used at sentencing, was so used.  In *State v. Everybodytalksabout*, 166 P.3d 693 (Wash. 2007), statements incorporated into the PSI were used against the defendant in a subsequent trial, not sentencing.  *In re Carter*, 848 A.2d 281 (Vt. 2004), involved a PSI and goes against the great weight of authority regarding the PSI being a critical stage.

[5]     Joined by then Judge, now Justice, Ruth Bader-Ginsburg.

7

presence of counsel at all phases of the PSE including the polygraph fails, since we would not extend *Estrada*.

Assuming, second, the *Estrada* Court viewed the critical stage to include not only the decision to undergo the examination but also the examination process itself, then our analysis turns to whether that determination necessarily means that Hughes must be entitled to the presence of counsel at all such phases of the PSE. Hughes contends that once a critical stage is defined, the Sixth Amendment guarantees the right to have counsel present at all times during that critical stage. The State argues that, since the right Hughes seeks to protect relative to the PSE is the right against self-incrimination, the Sixth Amendment right to the effective assistance of counsel is satisfied through counsel's advice relative to participation in the PSE, which does not require counsel's presence during the examination itself.

Hughes asserts that whenever a critical stage has been identified, the right to the presence of counsel during that stage has been guaranteed. Hughes cites, as support for this proposition, *Mempa v. Rhay*, 389 U.S. 128 (1967) (right to presence of counsel at sentencing hearing); *White v. Maryland*, 373 U.S. 59 (1963) (right to presence of counsel at preliminary hearing); *Gideon v. Wainwright*, 372 U.S. 335 (1963) (right to presence of counsel at trial); and, *Hamilton v. Alabama*, 368 U.S. 52 (1961) (right to presence of counsel at arraignment). Indeed, recently in *Montejo v. Louisiana*, 129 S.Ct. 2079 (2009), the Court reiterated:

> Under our precedents, once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings. *United States v. Wade*, 388 U.S. 218, 227-228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Interrogation by the State is such a stage. *Massiah v. United States*, 377 U.S. 201, 204-205, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); see also *United States v. Henry*, 447 U.S. 264, 274, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).

*Montejo*, 129 S.Ct. at 2085.

As an initial matter, we note that Hughes has cited no case that expressly holds that there is a Sixth Amendment right to the presence of counsel during the conduct of the PSE examination itself when the PSE is exclusively used for sentencing purposes, and our research has revealed none. We turn, then, to *Estrada* and *Estelle*. In *Estrada*, our Supreme Court held:

> It makes no sense that a defendant would be entitled to counsel up through conviction or entry of a guilty plea, and would also be entitled to representation at sentencing, yet would not be entitled to the advice of counsel in the interim period

regarding a psychosexual evaluation. The analysis in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), is instructive. In *Estelle*, the United States Supreme Court ruled that the capital defendant's pre-trial psychiatric evaluation was a critical stage of the proceedings. *Id.* at 470, 101 S.Ct. at 1877, 68 L.Ed.2d at 373-74. The Court stated the defendant had a Sixth Amendment right to the assistance of counsel *before* submitting to the interview, observing that it "is central to [the Sixth Amendment] principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Id.* at 470-71, 101 S.Ct. at 1876-77, 68 L.Ed.2d at 373-74 (quotation omitted).

. . . .

Importantly, the *Estelle* Court recognized that the defendant was not seeking a right to have counsel actually present during the exam. *Id.* at 471, n. 14, 101 S.Ct. at 1877, n. 14, 68 L.Ed.2d at 374, n. 14. This clarification reflects a difference between the "limited right to the appointment and presence of counsel recognized as a Fifth Amendment safeguard in *Miranda*" and a defendant's Sixth Amendment right to assistance of counsel. *See id.*; *see also State v. Tinkham*, 74 Wash.App. 102, 871 P.2d 1127, 1131 (1994) (ruling a court-ordered psychological exam to determine a defendant's future dangerousness for sentencing purposes is a critical stage requiring the assistance of counsel, but clarifying "we are not holding that counsel has a right to be present, only that the defendant has the right to advice"). This Court's finding that a Sixth Amendment right to *assistance* of counsel in the critical stage of a psychosexual evaluation inquiring to a defendant's future dangerousness, does not necessarily require the *presence* of counsel during the exam. Because Estrada does not argue his attorney should have been present during the evaluation, this ruling is limited to the finding that a defendant has a Sixth Amendment right to counsel regarding only the decision of whether to submit to a psychosexual exam.

*Estrada*, 143 Idaho at 562-63, 149 P.3d at 837-38 (emphasis in original). It is evident that *Estrada* drew upon *Estelle* in order to distinguish between the advice of counsel and the presence of counsel under the Sixth Amendment. The *Byers* court provides additional context regarding *Estelle*'s critical stage analysis and the right to the assistance versus presence of counsel issue:

The foregoing discussion explains why the holding of *Estelle v. Smith*, *supra*, has relevance to this case. There counsel had not been advised, in advance of his client's pretrial psychiatric examination to determine competency to stand trial, that the psychiatrist would attempt to assess in addition the accused's future dangerousness, for use in any subsequent sentencing hearing-which use was later made. The accused had neither pleaded insanity nor given any notice of intent to plead insanity, and clearly had a Fifth Amendment right to decline to undergo the psychiatric inquiry for sentencing purposes. In that inquiry, therefore, although the defendant was not confronted by his adversary he *was* confronted "by the legal system," in that he had a law-related choice before him, and could have

9

profited from the expert advice of counsel "in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed," 451 U.S. at 471, 101 S.Ct. at 1877. It was that, and that alone which (given the importance of the matter involved) caused the interview "to be a 'critical stage' of the aggregate proceedings against respondent," *id.* at 470, 101 S.Ct. at 1876-which is why the Court described its holding as affirming a Sixth Amendment right to assistance of counsel "*before* submitting to the . . . psychiatric interview," *id.* at 469, 101 S.Ct. at 1876 (emphasis added). The Court specifically disavowed any implication of a "constitutional right to have counsel actually present during the examination," citing the *dissent* in our opinion in *Thornton v. Corcoran*, *supra. Id.* at 470 n. 14.

*Byers*, 740 F.2d at 1119 (emphasis in original).

The *Estrada* and *Estelle* Courts took pains to distinguish the right to the advice of counsel regarding the examination process from a right to the presence of counsel during the examination process. If, as Hughes argues, the Sixth Amendment provides an absolute right to the presence of counsel at all times during a "critical stage," there would be no reason for the *Estrada* and *Estelle* Courts to engage in any analysis of a distinction between the advice of counsel and the presence of counsel. Yet they did so. Each Court limited the right to the advice of counsel prior to the examination. Thus, if we assume here that both *Estrada* and *Estelle* can be read to hold that the entire examination process is a critical stage, we must also take from those cases that the Courts did not agree that the Sixth Amendment automatically provided an absolute right to the presence of counsel at all times during that "critical stage."

Several factors support the determination that the advice of counsel before the PSE satisfies the Sixth Amendment. First, as noted in *Byers*, *supra*, the examination phase is materially different from the pre-examination advice and decision phase. The defendant is confronted by the procedural system at the point at which the defendant must make decisions relative to psychiatric examination, but not the psychiatric interview itself. *Byers*, 740 F.2d at 1118-1120. At the decisional point, the defendant is confronted by the legal system in that a law-related choice must be made, from which the defendant could benefit from the advice of counsel. *Id.* In addition, the defendant is not confronted by his expert adversary during the psychiatric interview. *Id.* Thus, the basis for recognition of a critical stage and its protections does not necessarily fit the examination phase. Second, the right sought to be protected is the right against self-incrimination. The advice of counsel during the decisional phase provides the defendant with information as to the examination process as well as the right to refuse

examination to avoid self-incrimination. Thus armed, the defendant can adequately proceed through the examination. Third, even if the defendant could further benefit from counsel's accessibility during the examination, overall, counsel's presence would hinder rather than further the process:

> Even if a psychiatric interview otherwise met one of the two theoretical tests for Sixth Amendment protection, it would be relevant to consider the pragmatic effects of presence of counsel upon the process. The Sixth Amendment, like the Fifth (as we have earlier discussed), is not oblivious to practical consequences. In *Wade*, for example, the Court felt constrained to note that "[n]o substantial countervailing policy considerations have been advanced against the requirement of the presence of counsel." 388 U.S. at 237, 87 S.Ct. at 1937. That is not so here. The "procedural system" of the law, which is one justification for the presence of counsel and which, by the same token, the presence of counsel brings in its train, is evidently antithetical to psychiatric examination, a process informal and unstructured by design. Even if counsel uncharacteristically sat silent and interposed no procedural objections or suggestions, one can scarcely imagine a successful psychiatric examination in which the subject's eyes move back and forth between the doctor and his attorney. Nor would it help if the attorney were listening from outside the room, for the subject's attention would still wander where his eyes could not. And the attorney's presence in such a purely observational capacity, without ability to advise, suggest or object, would have no relationship to the Sixth Amendment's "Assistance of Counsel."

*Byers*, 740 F.2d at 1120. Indeed, the *Estelle* Court referenced this countervailing consideration:

> Respondent does not assert, and the Court of Appeals did not find, any constitutional right to have counsel actually present during the examination. In fact, the Court of Appeals recognized that "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination." 602 F.2d at 708. *Cf. Thornton v. Corcoran*, 132 U.S.App.D.C. 232, 242, 248, 407 F.2d 695, 705, 711 (1969) (opinion concurring in part and dissenting in part).

*Estelle*, 451 U.S. at 471, n.14. As a practical matter, counsel's presence could largely negate the value of the examination as it would likely hinder the ability of the examiner to conduct an effective examination. Thus, it is apparent that there are important differences between the examination phase and the advice and decision phase relative to a PSE and the attendant need for the presence or assistance of counsel.

The Sixth Amendment right to the effective assistance of counsel, in the context of a PSE, is satisfied by counsel advising the defendant prior to the conduct of the examination itself,

without requiring counsel's physical presence at the examination. Furthermore, we are not inclined to extend the holding in *Estrada* where the Court explicitly limited its ruling to the advice of counsel prior to the PSE. As long as appropriate advice is given prior to the examination that comports with *Estrada*, the Sixth Amendment requirement for effective assistance of counsel has been satisfied. Thus, Hughes' counsel was not ineffective for failing to be present during the PSE.

**B.      Ineffective Assistance of Counsel - Fifth Amendment Right to the Physical Presence of Counsel at the Polygraph Taken Incident to the PSE.**

Having determined that the *Sixth* Amendment did not afford Hughes a right to the presence of counsel during the PSE, we must next consider his contention that he possessed a *Fifth* Amendment right to counsel during the polygraph because the polygraph test constituted a custodial interrogation. Hughes asserts that he requested to have counsel present at the polygraph examination which was not honored and, therefore, his Fifth Amendment right was violated. Further, he argues that since the PSE incorporated and relied on the unconstitutionally obtained polygraph, counsel should have moved to suppress the PSE. Finally, Hughes avers that had the motion to suppress been filed, he would have prevailed upon the motion, thus demonstrating prejudice by counsel's ineffective assistance.

The Fifth Amendment does not contain specific language regarding a right to counsel. The Fifth Amendment provides a constitutional right against self-incrimination. It is the Sixth Amendment which expressly provides a right to the assistance of counsel. The Sixth Amendment right to counsel attaches at such time as adversarial proceedings against a person have been initiated. *Kirby*, 406 U.S. at 688-689. However, the United States Supreme Court recognized that there are limited circumstances when a person may require the assistance of counsel to protect the Fifth Amendment right against self-incrimination but a Sixth Amendment right to counsel has not attached. These limited circumstances arise when the person is interrogated while in custody, which the Supreme Court has recognized exposes the person to an unacceptable risk of compelled self-incrimination. Consequently, in *Miranda* the Court recognized a right to counsel as a prophylactic protection of the Fifth Amendment right against compelled self-incrimination in a custodial interrogation setting. *Miranda*, 384 U.S. at 471-473. This right to counsel is derivative of the Fifth Amendment right against self-incrimination, but is commonly referred to as the Fifth Amendment right to counsel. As a further protection of the

Fifth Amendment right against self-incrimination, the *Miranda* Court required that a person in such custodial interrogation setting must be advised of the right against self-incrimination and the right to the presence of an attorney during such interrogation. *Id.*

The Fifth Amendment right to counsel is separate and distinct from the right to counsel contemplated under the Sixth Amendment. In *Estrada*, the Court noted the "difference between the 'limited right to the appointment and presence of counsel recognized as a Fifth Amendment safeguard in *Miranda*' and a defendant's Sixth Amendment right to assistance of counsel." *Estrada*, 143 Idaho at 562, 149 P.3d at 837 (quoting *Estelle*, 451 U.S. at 471, n.14). In *McNeil v. Wisconsin*, 501 U.S. 171, 177-78 (1991), the Court stated that "to invoke the Sixth Amendment interest is, as a matter of *fact, not* to invoke the *Miranda-Edwards*[6] interest. (Emphasis in original.) In *Estelle*, 451 U.S. 454, n.14, the Court noted that "[b]ecause [pretrial] psychiatric examinations . . . are conducted *after* adversary proceedings have been instituted, we are not concerned in this case with the limited right to the appointment and presence of counsel recognized as a Fifth Amendment safeguard in *Miranda*." (Emphasis added.)

A defendant's Fifth Amendment privilege against self-incrimination extends to a PSE, including a polygraph conducted incident thereto. *Estrada*, 143 Idaho at 563-64, 149 P.3d at 838-39. The question, then, is what constitutional mechanism(s) protects that right in that setting. As noted, *Estrada* holds that the Sixth Amendment right to counsel requires that counsel advise a defendant regarding the right against self-incrimination prior to the conduct of the PSE. *Id*. Thus, clearly, the Sixth Amendment does provide a mechanism to protect the Fifth Amendment right against self-incrimination relative to a polygraph conducted incident to a PSE. However, Hughes contends that the Fifth Amendment also provides a presence of counsel mechanism for protection of the right against self-incrimination in this context. In essence, Hughes claims that the polygraph, taken within and for use in the adversarial proceeding, is of the character of a *Miranda*-type custodial interrogation and, thus, a Fifth Amendment right to the presence of counsel should be recognized.[7] Hughes cites no state or federal case that expressly

---

6        *Edwards v. Arizona*, 451 U.S. 477 (1981).

7        It should be noted that Hughes does not claim, on this appeal, that he was entitled to be advised of his right against self-incrimination by someone other than counsel in regard to the PSE and polygraph.

13

holds that a defendant is entitled, under the Fifth Amendment, to the presence of counsel during a polygraph conducted incident to a psychological evaluation for sentencing purposes.

Generally, the right to the effective assistance of counsel during an adversarial proceeding, including advice and presence of counsel, is a Sixth Amendment right.[8]   Once adversarial proceedings have been initiated and the Sixth Amendment right to counsel has attached, it is generally unnecessary to engage in an analysis relative to a Fifth Amendment right to counsel.  We have not been cited to nor have we discovered any instance when the United States Supreme Court has analyzed the right to the presence of counsel regarding an activity undertaken within an adversarial proceeding under both the Sixth Amendment's critical stage test and the Fifth Amendment's custodial interrogation test.  Nevertheless, the Court has provided some indication that some Fifth Amendment analysis may remain applicable even after the Sixth Amendment attaches.  In *McNeil* the Court stated:

> The purpose of the Sixth Amendment counsel guarantee--and hence the purpose of invoking it--is to "protec[t] the unaided layman at critical confrontations" with his "expert adversary," the government, *after* "the adverse positions of government and defendant have solidified" with respect to a particular alleged crime.  *Gouveia*, 467 U.S., at 189, 104 S.Ct., at 2298.  The purpose of the *Miranda-Edwards* guarantee, on the other hand--and hence the purpose of invoking it--is to protect a quite different interest:  the suspect's "desire to deal with the police only through counsel," *Edwards*, *supra*, 451 U.S., at 484, 101 S.Ct., at 1884.  This is in one respect narrower than the interest protected by the Sixth Amendment guarantee (because it relates only to custodial interrogation) and in another respect broader (because it relates to interrogation regarding *any* suspected crime and attaches <u>whether or not</u> the "adversarial relationship" produced by a pending prosecution has yet arisen).

*McNeil v. Wisconsin*, 501 U.S. at 177-78 (italics in original; underlining added).  In *Montejo*, the Court stated:

> It is true, as Montejo points out in his supplemental brief, that the doctrine established by *Miranda* and *Edwards* is designed to protect Fifth Amendment, not Sixth Amendment, rights.  But that is irrelevant.  What matters is that these cases,

---

[8]   Certainly a situation may exist in which a defendant in an adversarial proceeding, while in custody, is interrogated regarding matters not related to issues relevant to the adversarial proceeding, at which time the Fifth Amendment right to counsel would apply, not the Sixth Amendment (since no adversarial proceeding exists as to the unrelated matters).  We note, however, that inquiry into matters related to future dangerousness, as is common in the PSE, are matters related to issues in the existing adversarial proceeding to the extent used for sentencing in that proceeding.

like *Jackson*, protect the right to have counsel during custodial interrogation--which right happens to be guaranteed (once the adversary judicial process has begun) by *two* sources of law.

*Montejo*, 129 S.Ct. at 2090 (emphasis in original). These statements could be read as recognizing some Fifth Amendment based mechanism to protect the right against self-incrimination even after the Sixth Amendment attaches.

In *State v. Lankford*, 116 Idaho 860, 871, 781 P.2d 197, 208 (1989), our Supreme Court took up whether it was error for the trial court to allow an examining psychiatrist to testify at the sentencing hearing. The principal contention was that the psychiatrist's testimony served as an improper mode for the State to use the defendant's own statements against him. The Court determined that the testimony was admissible in light of a valid waiver and counsel's prior knowledge of the examination. In the context of determining whether Lankford's right against self-incrimination had been honored, the Court stated:

> The fifth amendment privilege against self-incrimination and the sixth amendment right to counsel apply to custodial psychiatric exams conducted prior to sentencing as well as those conducted prior to trial. Adequate protection of these rights requires that the examining psychiatrist Mirandize the patient. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

*Lankford*, 116 Idaho at 871, 781 P.2d at 208. The Court did not engage in a Sixth Amendment analysis. The only other reference to the Sixth Amendment was in describing Lankford's claim as having been denied his right to the "assistance" of counsel. *Id*. The *Lankford* Court's Fifth Amendment analysis was focused entirely upon protection of the right against self-incrimination and did not refer to a right to the presence of counsel or otherwise address the scope of "assistance" of counsel. In discussing *Lankford*, the *Estrada* Court held:

> This Court's decisions clearly indicate that both at the point of sentencing and earlier, for purposes of a psychological evaluation, a defendant's Fifth Amendment privilege against self-incrimination applies.[2] *See State v. Lankford*, 116 Idaho 860, 871, 781 P.2d 197, 208 (1989) ("The fifth amendment privilege against self-incrimination and the sixth amendment right to counsel apply to custodial psychiatric exams conducted prior to sentencing as well as those conducted prior to trial.").

---

[2] This Court distinguishes between the Fifth Amendment privilege against self-incrimination and the framework set out under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16

15

> L.Ed.2d 694 (1966) to protect those rights in certain circumstances. *Id.* *Miranda* warnings are merely a method of protecting one's Fifth Amendment rights. That *Miranda* is not required does not mean the privilege against self-incrimination does not exist. *See Minnesota v. Murphy*, 465 U.S. 420, 430-34, 104 S.Ct. 1136, 1143-45, 79 L.Ed.2d 409, 421-24 (1984) (noting privilege could have been invoked during interview with probation officer, but ruling *Miranda* warnings not required because the interview was not a "custodial interrogation"). <u>This case does not address *Miranda*, and this Court does not hold that it was necessary for [the psychosexual evaluator] to *Mirandize* Estrada before conducting the psychosexual evaluation</u>.

*Estrada*, 143 Idaho at 563, n.2, 149 P.3d at 838, n.2 (underlining added). Thus, in quoting *Lankford*, the *Estrada* Court omitted the statement that "adequate protection of these rights requires that the examining psychiatrist Mirandize the patient," and then affirmatively stated that it was not holding that it was necessary for the psychosexual evaluator to *Mirandize* Estrada before the PSE.[9]

Both *Lankford* and *Estrada* rely upon *Estelle*. The *Estelle* Court's Fifth Amendment discussion regarding *Miranda* was in specific reference to the "right to remain silent" and that "anything said can and will be used against the individual in court." *Estelle*, 451 U.S. at 467. Both *Estelle*'s and *Lankford*'s discussion of *Miranda* are focused on the warning to a defendant of the Fifth Amendment right against compelled self-incrimination, and not specifically a Fifth Amendment right to counsel. As previously noted, the *Estelle* Court stated that its right to counsel analysis was under the Sixth Amendment:

> Because psychiatric examinations of the type at issue here are conducted after adversary proceedings have been instituted, we are not concerned in this case with the limited right to the appointment and presence of counsel recognized as a Fifth Amendment safeguard in *Miranda*.

---

[9] The *Estrada* Court's intended effect on the statement in *Lankford* that the examiner must *Mirandize* the defendant is unclear. It may be that the *Estrada* Court, upon recognizing that counsel must advise the defendant of the right against self-incrimination prior to the PSE, determined that *Mirandization* by the examiner was unnecessary. It may be that the *Estrada* Court, acknowledging that no prior court had "articulated a Fifth Amendment right against self-incrimination as it applies to psychosexual evaluations that may support a harsher sentence in a non-capital case," 143 Idaho at 564, 149 P.3d at 839, was drawing a distinction between what is required in a capital case, as in *Lankford*, and a non-capital case, as in *Estrada*.

16

*Estelle*, 451 U.S. at 471, n.14. This "difference between the 'limited right to the appointment and presence of counsel recognized as a Fifth Amendment safeguard in *Miranda*' and a defendant's Sixth Amendment right to assistance of counsel," was important to the *Estrada* Court in the role of counsel in the protection of the right against self-incrimination. *Estrada*, 143 Idaho at 562, 149 P.3d at 837 (quoting *Estelle*, 451 U.S. at 471, n. 14). As Justice Rehnquist stated when he concurred in *Estelle*:

> The *Miranda* requirements were certainly not designed by this Court with psychiatric examinations in mind. . . . Unlike the police officers in *Miranda*, Dr. Grigson was not questioning respondent in order to ascertain his guilt or innocence. Particularly since it is not necessary to decide this case, I would not extend the *Miranda* requirements to cover psychiatric examinations such as the one involved here.

*Estelle*, 451 U.S. at 475-76 (Rehnquist, J., concurring).

The privilege against self-incrimination extends to a PSE, including a polygraph conducted incident thereto. *Estrada*, 143 Idaho at 563-64, 149 P.3d at 838-39. Under varying fact situations, courts have taken up the question of protection of that Fifth Amendment right and have required that the right against self-incrimination be communicated to the defendant by way of *Miranda*-type warnings or advice of counsel. Discussion of provision of warnings, when the role of counsel has not been the issue, has necessarily involved a Fifth Amendment *Miranda* analysis in order to determine whether someone other than counsel must communicate to the defendant the right against self-incrimination prior to the examination. However, the courts have generally not engaged in a Fifth Amendment analysis when the role of counsel in protecting the defendant regarding the right against self-incrimination has been at issue. Instead, whether, to what extent, and how counsel is required to assist the defendant in the protection of the right is a Sixth Amendment analysis. *Estrada* determined that the Fifth Amendment right against self-incrimination is protected, in the context of a PSE and incident polygraph, by virtue of the Sixth Amendment's guarantee of effective assistance of counsel, which requires that counsel inform the client regarding the decision of whether to submit to the PSE and the right to assert the privilege against self-incrimination during the PSE. This assistance of counsel is provided through advice prior to the PSE and does not require counsel's presence at the PSE. Thus, the Fifth Amendment supplies the right against self-incrimination but not a right to counsel during a polygraph conducted incident to a PSE. Protection of the right against self-incrimination in that

17

setting is supplied by the Sixth Amendment's right to counsel as set forth in *Estrada*. We are not convinced that the Fifth Amendment requires the presence of counsel during the PSE and/or polygraph conducted incident thereto. Therefore, Hughes' counsel was not ineffective for failing to be present at the polygraph and a motion to suppress the PSE would not have been successful.

**C.   Ineffective Assistance of Counsel - Failure to Ensure *Miranda* Warnings Given Prior to PSI.**

Hughes claims that his trial counsel rendered ineffective assistance by failing to ensure that Hughes had his *Miranda* rights read to him prior to the PSI. The post-conviction court determined that the PSI was not a "critical stage" as set forth in *Stuart v. State*, 145 Idaho 467, 180 P.3d 506 (Ct. App. 2007). Therefore, even if counsel failed to ensure that Hughes had his *Miranda* rights read to him prior to the PSI, that failure would not constitute ineffective assistance of counsel. "[I]f the stage is not critical, there can be no constitutional violation, no matter how deficient counsel's performance." *United States v. Benlian*, 63 F.3d 824, 827 (9th Cir. 1995); *see Estrada*, 143 Idaho at 562, 149 P.3d at 837.

We recently held that the PSI is not a critical stage and, therefore, no Sixth Amendment right attaches. *Stuart*, 145 Idaho at 471, 180 P.3d at 510. Hughes asks this Court to overturn *Stuart*. He argues that if the Sixth Amendment attaches through determination of guilt and then again at sentencing, and, per *Estrada*, it attaches during the interim period for the PSE, then it should attach during all of the interim period, including the PSI. However, *Estrada* took pains to distinguish between a PSE and a routine PSI:

> A psychosexual exam concerned with the future dangerousness of a defendant is distinguishable from a "routine" presentence investigation. Specifically, Idaho Rule of Criminal Procedure 32 does not require a defendant's participation in a presentence investigation report, whereas I.C. § 18-8316 states, "If ordered by the court, an offender . . . shall submit to [a psychosexual] evaluation. . . ." The presentence report relies greatly on information already available in public records, such as educational background, residence history and employment information. *See* I.C.R. 32(b). In contrast, a psychosexual evaluation like the one Estrada faced is more in-depth and personal, and includes an inquiry into the defendant's sexual history, with verification by polygraph being highly recommended. Because of the nature of the information sought, a defendant is more likely to make incriminating statements during a psychosexual evaluation than during a routine presentence investigation. As the district court in this case concluded, "the psychosexual evaluation contained information concerning Estrada's *future dangerousness*."

18

*Estrada*, 143 Idaho at 562, 149 P.3d at 837 (emphasis in original). We relied, in part, on this reasoning from *Estrada* for our determination that the PSI is not a critical stage. *See Stuart*, 145 Idaho at 470, 180 P.3d at 509. We also noted in *Stuart*:

> The majority of other courts to directly address this issue agree with the indication in *Estrada*. Several federal courts have held that a routine presentence investigation is not a critical stage of the proceedings in a non-capital case. *See United States v. Benlian*, 63 F.3d 824, 827 (9th Cir.1995); *United States v. Gordon*, 4 F.3d 1567, 1572 (10th Cir.1993); *United States v. Tisdale*, 952 F.2d 934, 940 (6th Cir.1992); *United States v. Hicks*, 948 F.2d 877, 885 (4th Cir.1991); *United States v. Woods*, 907 F.2d 1540, 1543 (5th Cir.1990); *United States v. Jackson*, 886 F.2d 838, 845 (7th Cir.1989). Furthermore, many state courts have likewise concluded that a non-capital presentence investigation is not a critical stage. *See e.g. Musgrove v. State*, 638 So.2d 1347, 1352 (Ala.Crim.App.1992), *aff'd* 638 So.2d 1360, 1363 n. 1 (Ala.1993); *Lang v. State*, 461 N.E.2d 1110, 1115-16 (Ind.1984); *People v. Daniels*, 149 Mich.App. 602, 386 N.W.2d 609, 613 (1986); *State v. Barber*, 494 N.W.2d 497, 501-02 (Minn.Ct.App.1993); *People v. Cortijo*, 291 A.D.2d 352, 352, 739 N.Y.S.2d 19 (2002); *State v. Knapp*, 111 Wis.2d 380, 330 N.W.2d 242, 245 (Ct.App.1983).

*Stuart*, 145 Idaho at 470, 180 P.3d at 509.

Hughes disagrees with the distinction noted in *Estrada* between the PSE and a routine PSI. Hughes claims that, in reality, there is no "routine" PSI in Idaho, that much of the information required by I.C.R. 32 is in-depth and personal rather than public, that the information gathered during the PSI may result in potential substantial prejudice in the form of sentence enhancement or additional charges, and that PSI investigators in Idaho are employees of the executive branch rather than the courts and, thus, government agents. These arguments present nothing that the *Estrada* Court was not aware of, including the type of information gathered, the sources of information, the manner in which it is compiled, by whom the information is presented, and how the information may positively or negatively affect the defendant.

Hughes also disagrees with our analysis in *Stuart* of the holdings in cases from other jurisdictions. However, our review confirms the correctness of that analysis and that the vast majority of courts hold that the PSI is not a critical stage. Lastly, Hughes argues that his PSI is distinguishable from *Stuart* because the PSE and polygraph were attached to it. However, the important point for Sixth Amendment analysis is not how the reports are presented to the court,

but their preparation. The PSI and the PSE, together with its polygraph, are discrete occurrences for Sixth Amendment critical stage analysis.

We decline to overturn *Stuart*. "[T]he rule of stare decisis dictates that we follow [controlling precedent], unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Reyes v. Kit Mfg. Co.*, 131 Idaho 239, 240, 953 P.2d 989, 990 (1998) (quoting *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990)). Hughes has not demonstrated that *Stuart* is manifestly wrong and, in fact, *Stuart* is consistent with our view expressed herein of the Sixth Amendment analysis relative to the PSE. Since the PSI is not a critical stage, Hughes' counsel could not have rendered ineffective assistance of counsel.

**D.     Ineffective Assistance of Counsel - Failure to Obtain an Independent, Confidential Psychiatric Evaluation.**

Hughes claims that his trial counsel provided ineffective assistance by failing to secure an independent psychiatrist for a variety of purposes incident to sentencing. The State counters that Hughes requested funding to obtain an independent evaluation, which the trial court denied. The State contends that any dissatisfaction with that ruling should have been raised on direct appeal. In his reply brief, Hughes responded that he is not appealing the denial of the request to obtain a second evaluation and, for the first time, articulated his claim as follows:

> [Hughes'] attorney performed below a reasonable standard when he agreed to have Mr. Hughes participate in a psychosexual evaluation, sight-unseen, *and agreed to the release of that document* without knowing what the document would contain in light of *State v. Wood*, 132 Idaho 88, 967 P.2d 702 [1998] and *Nelson v. Estelle*, 642 F.2d 903 (5th Cir. 1981).

Thus, Hughes now attempts to assert a claim that his attorney performed below a reasonable standard for failing to ensure that the PSE was not released to the court and the State unless and until Hughes and his attorney had the opportunity to review the evaluation and then determine whether it should be released. This is a radically different claim than what was pled and, therefore, will not be considered. As to the claim that an independent, confidential evaluation should have been obtained to assist with sentencing issues, Hughes' counsel requested funding from the court which was denied. Counsel, therefore, was not ineffective and, moreover, as the district court concluded, the denial of the motion could have been raised as an issue on direct

appeal. An application for post-conviction relief is not a substitute for an appeal. I.C. § 19-4901(b). A claim or issue which was or could have been raised on appeal may not be considered in post-conviction proceedings. *Id.*; *Whitehawk v. State*, 116 Idaho 831, 832-33, 780 P.2d 153, 154-55 (Ct. App. 1989).

## E. Ineffective Assistance of Counsel - Sixth Amendment Right to the Assistance of Counsel Regarding the PSE.

### 1. *Estrada* Violation.

Hughes argues that his attorney did not provide "adequate assistance in making decisions" with respect to the PSE and its accompanying polygraph as required by *Estrada*. As noted above, *Estrada* held that there is a Sixth Amendment right to counsel regarding "the decision of whether to submit to a psychosexual exam." *Estrada*, 143 Idaho at 563, 149 P.3d at 838. The post-conviction court assumed for purposes of the summary dismissal motion, that Hughes' assertion that his attorney "did not advise him of his right to remain silent regarding [the PSE]" was true. The court indicated that Hughes was advised of "his rights" prior to the polygraph, but noted that the record did not make clear what rights were given. However, Hughes' counsel, at oral argument, acknowledged that Hughes was *Mirandized* prior to the polygraph. The post-conviction court held:

> Assuming *arguendo* that Hughes was advised by use of *Miranda* warnings before taking the polygraph, this is insufficient as a matter of law to satisfy the requirements of *Estrada*. The examination given in this case required Hughes to respond to more than just the polygraph procedure. He was administered psychological testing and questioned thoroughly by the examiner. This latter examination clearly implicated his Fifth Amendment rights. Because his counsel did not advise him of his rights regarding the *entire* examination, Hughes did not receive the effective assistance of counsel and his Sixth Amendment rights were violated.

(Emphasis in original.) The post-conviction court then determined that Hughes had failed to demonstrate prejudice, the second prong of the *Strickland* test, because the sentencing court did not rely on the PSE to a significant degree and because negative information in the PSE was also available to the sentencing court independent of the PSE. Hughes contends that the post-conviction court erred in its determination regarding prejudice.

### 2.     Prejudice.

#### a.     The Prejudice Standard.

Hughes raises three claims regarding the prejudice prong of this ineffective assistance of counsel claim. First, Hughes contends that *Estrada* adopted a prejudice standard different from the *Strickland* standard, which requires that an applicant establish a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different, i.e., a different sentence would have been imposed. Instead, Hughes asserts that under *Estrada* prejudice exists so long as the sentencing court placed *any reliance* on the PSE. Second, as an extension of the reliance test argument, Hughes claims that the court should apply a per se prejudice standard. In essence, Hughes argues that when a court orders a PSE the court is presumed to review it and, hence, rely upon it and, therefore, prejudice should be presumed. Third, Hughes argues that, regardless of the articulation of the prejudice standard, the district court erred in finding that he was not prejudiced by counsel's failure to properly advise him of his rights relative to the PSE.

As noted, Hughes first argues that he need not demonstrate a reasonable probability that, but for his counsel's deficient performance, the outcome of the proceeding would have been different. Hughes asserts that he need only show that the sentencing court placed *any reliance* on the PSE at sentencing, without regard to any likelihood of change in the outcome, i.e., a different sentence being imposed. Hughes points to the following language in *Estrada* to support his claim:

> The sentencing judge's specific, repeated references to the psychosexual evaluation suggest that it did play *an important role* in the sentencing. While we do not pass judgment in any way on whether the sentence actually imposed on Estrada was unreasonable or excessive, nevertheless, Estrada has met his burden of showing that the evaluation *played a role* in his sentence. Therefore, Estrada has demonstrated prejudice as a result of his attorney's failure to advise him of his Fifth Amendment rights.

*Estrada*, 143 Idaho at 565, 149 P.3d at 840 (emphasis added). We are not persuaded that, by the above-quoted language, the *Estrada* Court intended to deviate in any way from the *Strickland* standard. In fact, in the paragraph immediately preceding the quote above, the *Estrada* Court specifically set forth the *Strickland* standard as follows:

> In addition to showing deficient performance under the first prong of *Strickland*, a criminal defendant claiming ineffective assistance of counsel must

22

demonstrate that the deficiency resulted in prejudice. 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. A defendant shows prejudice by establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Further, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

*Estrada*, 143 Idaho at 565, 149 P.3d at 840.

Thus, it appears that the *Estrada* Court applied the *Strickland* standard to the facts and determined that Estrada had met his burden, i.e., established a reasonable probability that the outcome would have been different. *See id.* The *Estrada* Court determined that the sentencing court's specific and repeated references to the PSE at sentencing were compelling in its analysis of prejudice. However, we do not believe that the *Estrada* Court intended to establish a new standard or hold that the level of the sentencing court's reliance on the PSE was the only factor in analyzing prejudice. The level of a sentencing court's reliance on a PSE, to the extent discernable, is, as discussed below, a factor, but not necessarily determinative, in the prejudice analysis. Thus, we reject Hughes' claim that he need only show that the sentencing court placed *any reliance* on the PSE at sentencing in order to demonstrate prejudice and the alternative contention that prejudice should be presumed. The applicant must demonstrate that there is a reasonable probability that, absent the PSE, the outcome (sentence) would have been more favorable to the applicant. A "reasonable probability" does not mean "more likely than not"; it means a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 693-94. In the present context, it refers to confidence that the sentence would be the same if the PSE had not been considered.

We turn to the question of how the *Strickland* prejudice prong should be applied with regard to the unique circumstances of a PSE. We conclude that there are three essential factors which make up the prejudice determination in this context. The first factor is whether the content of the PSE itself is materially unfavorable. The PSE should be reviewed to determine the extent and harmful character of statements and admissions made by the applicant and the conclusions of the evaluator based upon those statements and admissions to determine the level of negativity, if any. If the PSE is not materially unfavorable, then the second prong of the *Strickland* standard has not been met. If the PSE is materially unfavorable to the applicant, the level of its negativity will then be weighed with two additional factors. The second factor is the

23

extent of the sentencing court's reliance on the PSE if it can be demonstrated from the record. The third factor is the totality of the evidence before the sentencing court.

The first factor focuses on the actual content of the PSE itself, not the extent of reference thereto by the sentencing court. It is presumed that the sentencing court would read a PSE which it ordered prior to sentencing. Therefore, regardless of any actual references to the PSE by the court at sentencing, the level of negativity of the PSE itself weighs on the determination of prejudice. Obviously, the more or less negative the PSE, the more or less weight it lends toward a finding of prejudice. The second factor focuses on the discernable reliance placed by the sentencing court on the information from the applicant recorded in the PSE and the conclusions based thereon by the evaluator. We appreciate that the sentencing court is not required to set forth its reasons for the imposition of a particular sentence. *See State v. Martinsen*, 128 Idaho 472, 475, 915 P.2d 34, 37 (Ct. App. 1996). Thus, proving from the record the sentencing court's reasons for imposing a particular sentence, including the court's level of reliance on the PSE, may not be possible. It is because of this difficulty that we place weight on the negativity of the PSE itself and apply a multi-factorial test rather than a simple reliance test. The third factor takes into consideration all of the evidence bearing on sentencing other than the PSE. Application of this factor does not shift our analysis to a determination of whether the sentence imposed is supported by the evidence. Rather, the inquiry is whether it can be said, considering all of the evidence before the sentencing court, that there is a reasonable probability that the PSE resulted in a greater sentence.

As the United States Supreme Court recognized in *Strickland*:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695-96. Thus, the weakness or strength of each factor will be considered and weighed in relation to the others. Ultimately, in order to demonstrate prejudice, the balance of these factors must undermine the reviewing court's confidence that, absent consideration of the PSE, the sentence would have been the same.

        **b.**      **The PSE.**

Reviewing the PSE itself, it is apparent that the evaluation was materially unfavorable to Hughes. From the information gathered from Hughes, the evaluator noted one positive factor, that Hughes "was greatly sorry for his selfish choice regarding his sexual relationship with [P.M.]." The evaluator concluded that there were five negative factors, including Hughes' non-consensual sexual relationship with P.M., Hughes' exploitation of P.M. by taking digital pictures of her, four failed marriages demonstrating impairment in social relationships, past allegations of sexual abuse of Hughes' then seven-year-old stepdaughter, and Hughes' rationalization and justification of his actions by claiming that he was in love with P.M. and that she met his emotional needs when he really evinced a self-centered lack of empathy toward a vulnerable female. The evaluator's conclusion was that Hughes was not amenable to out-patient treatment based on his lack of personal responsibility, empathy, and lack of honesty as demonstrated by his polygraph. The sentencing court read the PSE as opining that Hughes was a moderate risk to re-offend, but the court believed, based upon all the evidence, that the risk was actually "unacceptable and high." Nonetheless, the PSE was materially unfavorable to Hughes. Information regarding Hughes' conduct and attitude with respect to the offense charged and allegations regarding past sexual abuse, which the polygraph indicated Hughes was not being truthful about, underscore the negative aspects of the PSE.

        **c.**      **The District Court's Reliance on the PSE.**

The sentencing court made only two overt references to the PSE during sentencing. The first reference was made in the context of the court's analysis of the I.C. § 19-2521(2)(b) factors weighing in favor of probation as an appropriate option, specifically, whether the defendant contemplated that the criminal conduct would cause or threaten harm:

> According to the evaluation performed by [the psychosexual evaluator], he diagnoses you as having an adult antisocial personality disorder. What adult antisocial personality disorder connotes is a person who has a lack of empathy for the suffering of others and the rights of others and who is ready, willing and prepared to put their own interests first and to lie about doing so and feel no guilt about having done so.

> I think that you genuinely do feel remorse at this time. What I can't tell is whether that remorse is for what you did, or for being caught for what you did.

The second reference to the PSE was made in the context of the court's analysis of the I.C. § 19-2521(1) factors supporting imprisonment:

> First, I am to consider whether there is an undue risk during the period of a suspended sentence or probation you will commit another crime. I find that that is a specific probability and likelihood. In this way, frankly, sir, the ironic thing is that the one thing you objected to is the evaluation by [the psychosexual evaluator] and it very frankly is the single best piece of information in your favor. It evaluates you as a moderate risk of re-offense. Frankly, I have reason to question the accuracy of the results given the history. Given what's gone on before, it appears to me that the risk of re-offense is unacceptable and high.

At least the first of these overt references regarding antisocial personality disorder shows some negative reliance on the PSE by the sentencing court.

We note, again, that while specific references to the PSE are indicative of a sentencing court's reliance on that evaluation for sentencing purposes, a court may rely on the PSE without specific reference. Consequently, Hughes argues that certain statements made by the sentencing court imply that the court relied on other negative information from the PSE. The first asserted implicit reference was made in the context of the court's analysis of the I.C. § 19-2521(2)(b) factors weighing in favor of probation as an appropriate option:

> First, the first factor I am to consider is whether the defendant's criminal conduct neither caused nor threatened harm. In this case I expressly find as a matter of fact that this criminal defendant's behavior did pose and threaten harm and in fact result in harm both to the victim in this case and the victims in other cases before him.

The second asserted implicit reference to the PSE was made in the context of the court's analysis of the I.C. § 19-2521(1) factors supporting imprisonment:

> I am to consider finally whether your criminal conduct was the result of circumstances unlikely to recur. Based upon the information available to me, it appears that this is the last in a fairly long installment of inappropriate action. And depending on how one wants to look at this, it has been escalating one piece at a time.
>
> At different times it's apparently involved younger girls than [P.M.], but I'm not sure it did so over such a lengthy period of time. These crimes were repeated. This was not an accident. This isn't something where you gave in to a moment's worth of weakness or a stroke of bad judgment. This was over and over and over. It wasn't a mistake.

26

The statements made by the sentencing court relate to underage girls other than P.M. Hughes contends that the sentencing court was indirectly referencing the PSE when it spoke of younger girls and underage victims. However, the existence of allegations relative to other underage victims was not first revealed in the PSE by admissions from Hughes; the district court had information about these other alleged victims from other sources. Hughes points to the following statement in the PSE as the principal source of the sentencing court's references to other underage victims:

> Past allegations, especially allegations with his then 7-year-old stepdaughter, [C.C.]. The primary focus of one of the questions on Derrick's polygraph concerned allegations by [C.C.], his step-daughter. The polygraph results indicate that Derrick was being deceptive in his responses toward sexual conduct with [C.C.]. Regarding other under age victims, Derrick in his assessment told me that he did not sexually abuse any other children other than [P.M.]. However, he responded deceptively to any more under age victims.

Certainly, the sentencing court was aware that Hughes was reported as deceptive regarding the allegations concerning C.C. and whether there were any other underage victims. This likely confirmed the existence of other victims. However, the district court specifically mentioned only those other victims for which there was independent documentation. As to C.C., the district court casually referred to her in the context of Hughes' military service, stating:

> You did serve your country honorably in the Navy in Vietnam; although, you ultimately were discharged for bad conduct as a result of conduct not apparently unlike that that's alleged here. It doesn't appear that you have been repeatedly arrested time and time again. I'm not sure whether that is accountable by reason of your having remained under the radar as [the prosecutor] alleges, or whether you were not engaged in that behavior.
> But I will tell you, sir, that looking at the packets of photographs marked in this case as Exhibits 2 and 3, it appears to me that you were under the radar.

The last sentence quoted above is in reference to the pornographic photographs of Z.M. and A.G., engaged in sexual acts and various stages of undress that were found on Hughes' computer and indicated that Hughes had been engaged in acts with underage girls. When reviewing the sentencing factors, the sentencing court stated:

> I'm asked to determine whether you are a multiple offender or professional criminal. What I will tell you, sir, is that the photographs that I have looked at in this case suggest to me that you are a multiple offender.

27

Thus, the references to other underage victims came from verifiable sources other than admissions made by Hughes in the PSE. Based upon information discernable from the record, we cannot conclude that these statements of the court support Hughes' contention that the court impliedly relied on the PSE.

Overall, the sentencing court's reliance on the negative aspects of the PSE was apparently slight. While we may not completely agree with the characterization, the trial court expressly stated to Hughes that the evaluation was "the single best piece of information in your favor." The court indicated that the PSE had evaluated Hughes as a moderate risk of re-offense when, based upon the totality of the evidence, the court believed Hughes to be a high risk.

### d. Totality of the Evidence.

In this case, the sentencing court set forth its reasons for imposition of Hughes' sentence, thus providing a record for review. In addition to the court's comments discussed above, the sentencing court cited other evidence in the record in consideration of the I.C. § 19-2521(2) factors and determined that Hughes "acted to help [him]self and no one else and cared little about the results on others;" that there were "no grounds which excuse or justify [Hughes'] behavior in this case, none whatsoever;" that Hughes "took advantage of [P.M.'s] weaknesses;" that Hughes had "stolen a young woman's childhood and [the court didn't] think there [was] any way [he] could give that back;" and, that Hughes' conduct with P.M. was not "something where [he] gave in to a moment's worth of weakness or a stroke of bad judgment . . . [because it] was over and over and over." Regarding whether Hughes' character and attitude indicated that the commission of another crime was likely, I.C. § 19-2521(2)(i), the court stated, "I think frankly that if left unsupervised in this community, or even supervised on probation, the likelihood that you would commit additional crimes is highly probable." The court ultimately determined that "the long and short of it is that I find that none of the factors which would favor probation, or for that matter retained jurisdiction as outlined in subsection (2) of Idaho Code Section 19-2521 apply here."

The sentencing court cited other evidence in the record in consideration of the I.C. § 19-2521(1) factors stating, "I am to determine whether a lesser sentence will depreciate the seriousness of the defendant's crime. I think that any lesser sentence than I have determined in this case will do that." The court also stated, regarding the appropriateness of punishment and deterrence, that "[imprisonment] is the only potential form of deterrent and it is the only probable

28

deterrent for others who would be so inclined." The court's determination as to future dangerousness was certainly based not only on the facts of the instant offense, but also on the existence of other victims. As set forth above, the evidence of the existence of other victims most important to the sentencing court was Hughes' sexually explicit photographs of Z.M. and A.G, as well as a passing reference to C.C., the knowledge of which did not come from admissions made by Hughes in the PSE.[10] The court concluded that the PSE evaluator was wrong in the conclusion that Hughes was a moderate risk to re-offend, when the court believed that he was a high risk. Thus, the court concluded that, based upon facts and conclusions outside the PSE and in consideration of all of the factors, imprisonment was appropriate.

Hughes pled guilty to ten of twenty-one original counts in exchange for dismissal of the remaining counts. In his plea, Hughes admitted to engaging in a sexual relationship with P.M. over the course of approximately six months. During that span of time, Hughes repeatedly raped and engaged in acts of sexual abuse of P.M., made pornography available to P.M., and had in his possession photographs and videos of P.M. where she was shown to be naked, exposing her genitalia, and engaging in sexual conduct.

After weighing the sentencing factors as discussed above, immediately prior to imposing sentence, the court stated:

> There are several other things that I want to say to you. The first of those things is that I think you genuinely are remorseful, but as I said earlier, I'm not sure it's for what you did or for being caught at *what you did*. I guess neither one of those decisions is particularly important to me because I think irrespective of the level of your remorse, sir, your conduct speaks louder than any words that you could possibly say to me today.
>
> You have engaged in what you characterize as a sin. It's more accurate to say, sir, that it's a violent, dangerous crime. You say that you wish to recompense the community. There is no way to recompense the community for *what you've done here*.
>
> [Defense counsel] indicates that you aren't a monster but a man. I agree you're a man, but I'm not sure you're not a monster, sir. Grown men don't engage in the kind of conduct you engaged in *in this case*. They just don't do it

---

[10] We note that the PSE does not mention Z.M. or A.G. specifically, which information may have been important to the risk category determination. In addition, the determination from the polygraph that Hughes was not honest when he denied the existence of other victims was clearly supported in the record by the pornographic photographs of Z.M. and A.G. on Hughes' computer.

unless there is something very evil down deep inside and I think that's maybe what I'm looking at, sir.

I think that you are a person who is manipulative. I think that you are skillful at it. I think you used those skills to take advantage of someone who was vulnerable. And I think that in order to impose a fair judgment *in this case* I must impose a lengthy term of imprisonment.

(Emphasis added.) The court's focus in these comments was on the facts of this case, without reference to the PSE or other victims. The sentencing court relied very heavily upon the totality of the evidence, as opposed to any admissions and/or conclusions from such admissions in the PSE.

Hughes pled guilty to five counts of rape, each count punishable by a maximum of life; two counts of sexual battery of a minor, each count punishable by a maximum of fifteen years; one count of disseminating material harmful to minors, punishable by a maximum of one year; and two counts of possession of sexually exploitive materials, each count punishable by a maximum of five years. The court sentenced Hughes to an indeterminate life term with twenty-five years determinate.

Thus, the question before this Court is whether there is a reasonable probability that, absent the PSE, the outcome of the proceeding (sentence) would have been more favorable to Hughes. We have considered the extent and character of any admissions by Hughes and conclusions based thereon in the PSE, the extent of the sentencing court's reliance on the PSE which can be demonstrated from the record, and the totality of the evidence before the sentencing court. From this review, we cannot say that there is a reasonable probability that, absent the PSE, Hughes would have received a more favorable sentence. Hughes has failed to demonstrate prejudice in satisfaction of the second prong of the *Strickland* standard. Therefore, the district court's dismissal of Hughes' claim of ineffective assistance of counsel for counsel's failure to advise Hughes regarding his rights prior to the PSE is affirmed.

## III.

## CONCLUSION

Hughes has failed to meet his burden of showing that his counsel provided ineffective assistance by failing to be present at the PSE, failing to move to suppress the PSE, failing to ensure that Hughes was read his *Miranda* rights prior to the PSI, and failing to secure an independent psychiatric evaluation. Hughes has failed to meet his burden of showing prejudice

resulting from his counsel's ineffective assistance in failing to advise him of his rights prior to the PSE. The district court's order summarily dismissing Hughes' application of post-conviction relief is affirmed.

Chief Judge LANSING and Judge Pro Tem PERRY, **CONCUR.**